THE STATE ex rel. ROBERT OTTO, Attorney-General, v. KANSAS CITY and ALBERT I. BEACH et al.

In Banc, October 7, 1925.

1. **CONSTITUTIONAL PROVISION: Statute: Parts Effective upon Different Dates.** A statute or a constitutional provision may have a potential existence though it will not go into operation until a future date; and where not prohibited by the Constitution, the Legislature may direct that different parts of the same statute shall go into effect upon different dates; and under constitutional provisions requiring all parts of a statute to take effect at the same time, it is sufficient that the statute becomes effective as an entirety at one time, notwithstanding that, as to some persons or matters affected by it, it becomes operative at different times.

   *Held*, by GRAVES, C. J., dissenting, with whom WALKER and WOODSON, JJ., concur, that a law cannot have a potential existence prior to the time fixed for it to become effective, but if by its terms it is to take effect in the future it takes effect only from the date fixed for it to become effective, and cannot be put in force on a prior date.

2. ——: **Amendment of 1920: New Charter of Kansas City: Parts Effective upon Different Dates.** Section 486 of the new charter of Kansas City, adopted February 24, 1925, providing that certain sections in the charter enumerated should go into effect immediately upon its adoption and the remaining sections on April 10, 1926, does not conflict with Section 16 of Article IX of the Constitution as amended in 1920, providing that if the proposed charter be adopted "it shall become the charter of such city at the time fixed therein and shall supersede any existing charter and amendments thereof." The new charter became the charter of the city on the day of its adoption, and it did not violate the constitutional amendment because the operation of certain sections was postponed to a subsequent date.

3. **LAWS: Omission of Details: Supplied by Implication.** A statute or city charter will not be declared void or unconstitutional because of the omission of details necessary to accomplish its evident purpose, if such details can be supplied by reasonable implication.

4. **CHARTER OF KANSAS CITY: Election Districts: Section Not Made Immediately Operative: Implication.** Since Section 7 of Article II of the new charter of Kansas City, adopted Feburary 24, 1925, fixes the boundaries of the four districts from which council-

State ex rel. Attorney-General v. Kansas City.

men are to be elected at an election to be held in November, 1925, their election will not be illegal or void because said Section 7 does not expressly declare that Sections 417 to 425, under the provisions of which said election is to be held, shall become effective at or prior to the date of said proposed election, and no law or ordinance of the city creates or defines the districts. By necessary implication Section 7 is in force to the extent that its operation shall become necessary to effectuate the purposes of Sections 417 to 425; and such purpose is evident from, if not compellingly expressed in, Section 425, providing that "the nomination and election of officers to serve for terms commencing April 10, 1926, shall be governed by provisions of this charter."

Held, by GRAVES, C. J., with whom WALKER and WOODSON, JJ., concur, that since Section 486 of the new charter, adopted by twenty per cent of the electorate, says that "except Sections 98, 108, 125, 417 to 425 inclusive, 457, 458, 486 and 488, all of which shall take effect immediately upon adoption, this charter shall take effect at ten o'clock A. M. April 10th, 1926," and Section 7, which creates and defines the election districts, is not one of the sections excepted, and therefore cannot go into effect until April 10, 1926, the charter does not provide election districts for an election to be held in November, 1925, and said language being plain and unambiguous there is no room for a contrary implication, and no valid election can be held in November.

5. ———: Election: Ordinance Unnecessary. If an election is held in full compliance with a constitutional provision relating to the adoption by the city of a new charter, an ordinance under the old charter providing for such special election is not necessary.

6. ———: ———: Initiative Petition: To Frame New Charter: Proposition and Commissioners on Same Ballot: Doubleness. To submit at the same election a proposition for a commission to frame a new city charter and the names of the candidates to be chosen to frame it, and to print the proposition and their names on the same ballot, is not to conjoin separate issues and restrict the voter's free choice, although the ballots contain the exact number of candidates which the Constitution requires as necessary to constitute the charter commission, and no more, and the voter must either consent that those persons shall frame the charter or vote against the proposition.

7. ———: Initiative Petition: Number of Signers. There is no inconsistency in a constitutional provision declaring that an initiative petition shall be signed by two per cent of the qualified voters, but in no case shall the signatures of more than one thousand be required.

8. ———: **Two-House Council.** The Constitution does not require that the charter of Kansas City provide for a two-house legislative council.

9. ———: **Combination of Administrative and Legislative Powers.** A new charter of Kansas City, containing provisions which classify and distribute the powers of city government in a manner different from what was done by the charter which it supersedes, and enlarging the administrative functions, particularly through the appointment of a city manager, does not violate any provision of the Constitution. Although it adopts the commission form of government, it still maintains a separation of the legislative and administrative departments, and if Article III' of the Constitution applied to city government it would still be true that it does not compel a total separation of legislative, administrative and judicial functions.

10. ———: **Levee Districts: Due Process.** The provisions of the new charter of Kansas City giving to the city power to establish levee districts, flood protection and traffic ways and to impose the costs of such works on the owners of property, do not violate the due-process provisions of either the State or Federal Constitution.

11. ———: **Civil Service: Suspense of Salary: Vested Right: Due Process.** No person has a vested right in the civil service law of the city under which he obtained employment by the city. The section of the new charter of Kansas City which provides against restoration to office of or payment of salary or compensation to any person, after the adoption of said charter, who claims to have been unlawfully removed or discharged from any office or position in the competitive class of civil service prior to a named previous date, does not violate the due-process clauses of the Constitution. The status of all such persons was fixed by direct legislation of the people, and the adoption of the new charter is direct legislation, and its provisions annul the existing civil service law and terminate the rights of persons holding positions thereunder.

12. ———: **Registration of Voters Prior to Adoption: Special Election: Increasing Debt.** The special election by which the new charter of Kansas City was adopted on February 24, 1925', was not void because it was not preceded by an intermediate registration of voters. Section 8887, Revised Statutes 1919, enacted in 1887, because of changes in conditions, does not apply to such an election. Section 40 of the Act of 1921 does not apply to a special election unless it is held for the purpose of submitting "a proposition to increase the indebtedness of any such city, by borrowing money"; and the submission for adoption at a special election of a new city charter which contains a provision authorizing the city "to borrow money to meet the cash requirements of the general fund

in anticipation of the receipts from the revenue of the current fiscal year," is not a submission of a proposition to increase the indebtedness of the city within the meaning of said Section 40.

13. ———: Constitutional Amendment of 1920: Doubleness: Distinct Subjects: Submission of Two Methods. The amendment of 1920 to Sections 16 and 17 of Article IX of the Constitution did not improperly join more than one subject, in that it provided two distinct methods of initiating a charter election, one by ordinance and one by initiative petition, nor in that it authorizes a submission of the question whether a commission shall be chosen to frame a new charter and the names of the candidates to compose the commission at the same election.

14. ———: Charter Commission: Proposed by Majority of Commission: Per Force Invalid.

Held, by GRAVES, C. J., with whom WALKER and WOODSON, JJ., concur, that the Constitution (Sec. 16, Art. IX, Amendment of 1920) provides for a charter commission of thirteen members to frame a new charter for a city of the class to which Kansas City belongs, and an instrument presented and signed by only ten members of the commission is not a charter contemplated by the Constitution. The commission is in no sense a legislative body, and the constitutional provision does not give to a majority of its members power to act for the whole commission. The law-making power is vested in the legal voters, and the thirteen citizens selected by them, and not a mere majority of them, are required to propose a charter for adoption to the actual law-makers. And no such new charter as the Constitution contemplates having been presented, per force of that fact none was adopted.

Held, by ATWOOD, J., on motion for rehearing, with whom BLAIR, J., and RAGLAND, J., concur, that the charter commission was a deliberative body, charged with the public duty of deliberating upon and presenting for adoption the form of a new charter, and where a quorum is not fixed by the Constitution prescribing that the commission shall be composed of a definite number, the general rule is that a quorum is a majority of all the members of the body; and the fact that the charter was signed by only ten of the thirteen citizens chosen to compose the charter commission—one member having died, one having resigned because of sickness, and a third being absent from the city at the time the charter was signed and reported, though he telegraphed his approval of it—does not affect the validity of the presentation of the charter or its adoption by the voters—the Constitution making no provision for the filling of vacancies..

309 Mo. Sup.—35.

Corpus Juris-Cyc. References: Constitutional Law, 12 C. J., Section 42, p. 699, n. 71; Section 220, p. 787, n. 96; Section 235, p. 803, n. 13; Section 390, p. 887, n. 38; Section 493, p. 958, n. 85; Section 644, p. 1019, n. 36; Section 804, p. 1099, n. 14; Section 962, p. 1197, n. 11; Section 966, p. 1200, n. 30; Section 1101, p. 1287, n. 18. Elections, 20 C. J., Section 63, p. 86, n. 39. Municipal Corporations, 28 Cyc., p. 238, n. 70; p. 241, n. 86; p. 242, n. 93; p. 244, n. 3; p. 250, n. 39 New; p. 315, n. 54; p. 321, n. 4. Parliamentary Law, 29 Cyc., p. 1688, n. 8. Statutes, 36 Cyc., p. 1079, n. 46; p. 1113, n. 81; p. 1131, n. 75; p. 1149, n. 39; p. 1151, n. 58; p. 1162, n. 56; p. 1192, n. 6, 10; p. 1201, n. 84, 85.

*Quo Warranto.*

WRIT QUASHED.

*R. E. Ball* and *Milton Schwind* for relator.

(1)   The status of the city in the scheme of state government is clearly subordinate.   People ex rel. v. Coler, 166 N. Y. 13, 52 L. R. A. 819; 2 Kent's Commentaries, 275; Heller v. Stremmel, 52 Mo. 311; Chillicothe v. Henry, 136 Mo. App. 468; St. Louis v. Dreisoerner, 243 Mo. 217; Trenton v. State of New Jersey, 262 U. S. 182.   (2)   The question of the validity of an amendment, or its consistency with the Constitution and laws of the State, is a judicial and not a political question. State v. McBride, 4 Mo. 307; Gabbert v. Railroad, 171 Mo. 97; State ex inf. Atty. Gen. v. Maitland, 296 Mo. 359; Cooley Cons. Lim., p. 875; Calland v. Springfield, 264 Mo. 296; State v. Harvell, 77 Miss. 543, 48 L. R. A. 625. (3)   A form of government alien to our laws is here set up.   Its validity to be determined by the organic law. Mo. Constitution, Art. III; sec. 20, Art. IX; State v. McBride, 4 Mo. 307; 1 Bryce's Am. Commonwealth, p. 477 et seq. (MacMillan, 1895); Story Com. on Const., secs. 548-570.   (4)   The bicameral system is established in our history; and the need of two houses of legislation is an axiom of political science.   Bryce's American Commonwealth, supra.   (5)   New Section 16, Article IX, is inoperative and void in respect to providing a certain and workable method for nominating candidates for a charter commission, as it contains two provisions, both of which are plain in meaning, but when read together are in irreconcilable conflict and are mutually destructive of each other.   12 C. J. 808, sec. 240; McBee v. Brady,

100 Pac. (Idaho) 97; Gabbert v. Railroad, 171 Mo. 97; State v. Butler, 70 Fla. 102. (6) New Section 16, Article IX, is in conflict with Section 2, Article XV, of the Constitution, in that it submits more than one subject improperly joined: (a) Two distinct and separate methods of initiating a charter election, one by ordinance and one by initiative; (b) it requires a submission of the question whether new offices shall be created and the names of persons to fill such proposed offices at the same election. State ex rel. v. Maitland, 296 Mo. 338; Gabbert v. Railroad, 171 Mo. 84. (7) The election of February 26, 1924, was void, because under the form of the official ballot used at said election the elector was not permitted to express himself freely upon separate and distinct subjects, namely, the question whether a commission should be named to frame a charter, and the question of suitable persons to constitute such commission. Authorities supra. (8) New Section 16, Article IX, denies to the elector rights guaranteed by the Constitution, both state and national. State ex rel. v. Maitland, 296 Mo. 358; State ex rel. v. St. Louis, 216 Mo. 47; Mo. Constitution, Art. 2, sec. 30; 14 Amendment, U. S. Constitution, sec. 1; Mo. Constitution, Art. 9, sec. 14; State ex rel v. Gordon, 268 Mo.321; State v. Moody, 230 Pac. 574; 9 R. C. L. sec. 76, p. 1059; Lewis v. Comm., 12 Kan. 213; Supervisors v. Railroad, 21 Ill. 374; Gabbert v. Railroad, 171 Mo. 84. (9) Under new Section 16, Article IX, a new charter can fix but one single time for its effective date, at which time it must go into operation in its entirety, and supersede any existing charter and amendments thereof. The Charter of 1925 is inoperative in that it violates this requirement. Laws 1921, pp. 701, 702; Rice v. Railroad, 63 Mo. 314; Perry v. Gross, 156 Pac. 1031; Commissioners v. Hiner, 54 Kan. 334; Finnegan v. Sale, 54 Kan. 420; Sec. 3, Art. 15, Sec. 20, Art. 9, Mo. Cons. (10) The ordinary rules of construction applicable to statutes apply to constitutions. State v. Dirckx, 211 Mo. 584; State v. Imel, 242 Mo. 293; Calland v. Springfield, 264 Mo. 301; State v. Moody, 230 Pac. 575. (11) To determine the meaning of a phrase in a constitutional provision, this

548 SUPREME COURT OF MISSOURI.

State ex rel. Attorney-General v. Kansas City.

court will look at other provisions as well as provisions previously effective, where the same or a similar word or phrase occurs. Union Tr. & Sav. Bank v. Sedalia, 254 S. W. 30. (12) And so by analogy, the term of a charter is like the term of an office. State ex rel. Withers v. Stonestreet, 99 Mo. 361; State ex rel. Sikes v. Williams, 22 Mo. 268; State v. Spitz, 127 Mo. 252; State v. Corcoran, 206 Mo. 1; State ex. rel. v. Smiley, 263 S. W. 827; State ex rel. Cosgrove v. Perkins, 139 Mo. 106. (13) The statutes requiring intermediate registration and revision of registration before a special charter election are mandatory, and the Charter of 1925 is void for failure to comply with the mandatory requirements of the applicatory law. R. S. 1919, sec. 8887; Laws 1921 (2nd. Extra Session) pp. 34, 35, sec. 35; Chillicothe ex rel. Meek v. Henry, 136 Mo. App. 469; St. Louis v. Dreisoerner, 243 Mo. 217; Ex parte Tarling, 241 S. W. 932; St. Louis v. Baskowitz, 273 Mo. 542.

*Solon T. Gilmore, Frank W. McAllister, Cyrus Crane, E. F. Halstead* and *B. N. Mosman* for respondents.

(1) The form of government set up in the new charter is not alien to our laws and not in conflict with the Constitution and laws of the State. Sec. 7978, R. S. 1919; Pacific States Co. v. Oregon, 223 U. S. 118; Kiernan v. Portland, 223 U. S. 151; Barnes v. Kirksville, 180 S. W. 545. (2) A legislative body of two houses is no longer regarded as a necessary part of a city government. 19 R. C. L. sec. 51, pp. 745, 746. The Constitution itself no longer requires two houses. Old Section 17 of Article IX, making such requirement, was repealed November 2, 1920. (3) The method prescribed by Section 16, Article IX, of the Constitution for nominating candidates for the charter commission is workable, and there is no conflict. (4) Section 16, Article IX, of the Constitution (amendment adopted November 2, 1920), does not violate the rule against doubleness in the submission of questions to the voters. (5) The amendment to the Constitution adopted November 2, 1920, is not inconsistent with other provisions of the Con-

stitution. Edwards v. Lessueur, 132 Mo. 433; Gabbert v. Railroad, 171 Mo. 84.

ATWOOD, J.—This proceeding is an information in the nature of *quo warranto* exhibited by the Attorney-General *ex-officio* against the present mayor and members of the upper and lower houses of the common council of Kansas City, Missouri. It challenges the validity of the new charter of Kansas City adopted February 24, 1925, and, among other things, charges that respondents "have usurped and now usurp and execute and threaten to execute" said new charter.

This charter consists of four hundred and eighty-eight sections. Section 486 thereof provides that Sections 98, 108, 125, 417 to 425 both inclusive, 457, 458, 486 and 488 shall take effect immediately upon the adoption of said charter, and that the remaining 472 sections shall take effect at 10:00 A. M., April 10, 1926. Section 98 empowers the city council, as now constituted under the Charter of 1908, by ordinance, to authorize the comptroller to borrow money not to exceed twenty-five per cent of the estimated general fund revenue for the fiscal year then outstanding and uncollected. By Section 108 the city is authorized to issue bonds in any sum up to three millions of dollars for certain purposes therein specified. By Section 125 provision is made against restoration to office of or payment of salary or compensation to any person, after February 24, 1925, claiming to have been unlawfully removed or discharged from any office or position in the competitive class of the civil service prior to the first day of January, 1925. Sections 417 to 425, both inclusive, provide for holding a municipal election for the choice of all municipal officers under the provisions of said new charter on the first Tuesday in November, 1925. Section 457 provides for a meeting of the first council-elect within three weeks after the election. Section 458 provides for the appointment of a committee to draft an administrative code to be introduced as an ordinance after the council takes office. Section 488 declares said charter to be a public act of which all courts shall take judicial notice.

Relator stands on his amended petition alleging that said new charter is illegal and void for the following reasons:

1. That Section 486 violates Section 16 of Article IX of the Constitution of Missouri.

2. That the sections specially named in Section 486 to become forthwith effective on the adoption of said charter are void as amendments to the charter of said city adopted in 1908, because the provisions of said Charter of 1908 governing the submission of proposed amendments thereto were not observed.

3. That the election of February 26, 1924, submitting the question, ''Shall a commission be chosen to frame a charter?'' and at which thirteen electors were presented as candidates for membership on the proposed commission, was not provided for by ordinance as directed by Section 29, Article 18, of the Charter of 1908.

4. That said election of February 26, 1924, was void because the question submitted whether a commission should be chosen to frame a charter and the names of the thirteen candidates to become members of said commission were printed on the same ballot and the voter was thereby remitted to the alternative of voting in the negative on said question or consenting that the thirteen candidates become the commission to frame the charter.

5. That said election was void because the proposition submitted thereat was double, in that the ballot had printed thereon the question whether a commission should be chosen to frame a charter, and the names of the thirteen candidates for membership on said commission.

6. That said new charter was sought to be adopted under the provisions of Section 16, Article IX, of the Constitution of Missouri; that said section is not self-executing, and the Legislature has not enacted an enabling statute.

7. That said Section 16 of Article IX of said Constitution is vague, indefinite, inconsistent and unenforce-

able, in that one clause thereof provides that petition for the nomination of candidates to constitute a commission to frame a charter shall be signed by not less than two per cent of the voters of such city, and another clause thereof provides that the signatures to such petition shall not be required to be more than one thousand.

8. That Articles II and III of said new charter are in violation of Article III of the Constitution of Missouri, relating to the distribution of powers, and also are in violation of Sections 8842 to 8849, both inclusive, Revised Statutes 1919.

9. That said new charter in so far as it vests all the powers of the city in one house of the common council with authority to delegate its authority and power to a city manager, is in violation of Section 16 of Article IX of said Constitution, in that said section does not authorize said city to so vest its powers.

10. That said new charter is not consistent with Article III of said Constitution and with Sections 8842 to 8849, both inclusive, Revised Statutes 1919, in that the powers of government are not distributed as there required, and Section 16 of Article IX of said Constitution being only an amendment to the Constitution of Missouri, adopted November 2, 1920, should not be construed as authorizing said city to frame a charter not consistent with and subject to the Constitution and laws of Missouri.

11. That the election of February 26, 1924, is void because no notice thereof was published for at least three weeks in a newspaper printed in said city having at the date of such publication a circulation of two thousand copies of each issue; nor was such notice published for said period of the election held on February 24, 1925.

12. That Articles IX and X of said new charter are in violation of Section 1 of Article XIV of the Amendments to the Constitution of the United States providing that no person shall be deprived of life, liberty or prop-

erty without due process of law, or denied the equal protection of the laws.

13.    That the election of February 26, 1924, is void because it submitted at the same time, at the same election and on the same ballot the question whether certain offices should be created and the names of those who would fill such offices.

14.    That Section 16 of Article IX of said Constitution is void, unenforceable and not self-executing for the reason that its terms are vague, uncertain, indefinite and unworkable, and it is insufficient to provide suitable machinery for political action of the electors in the free choice of separate issues necessary to be submitted.

15.    That Section 125 of said new charter is in violation of Sections 10, 15 and 30, Article II, of the Constitution of the State of Missouri, and Section 1 of Article XIV of the amendments to the Constitution of the United States.

16.    That said new charter was framed by ten instead of thirteen electors, and it is therefore not in compliance with Section 16, Article IX, of said Constitution.

17.    That said election of February 24, 1925, was not preceded by an intermediate registration as required by Section 35 of an act approved March 14, 1921, Laws of Missouri 1921, page 355, as amended by an act approved November 28, 1921, Second Extra Session 1921, pages 34 and 35; nor were the provisions of Section 8887, Revised Statutes 1919, complied with.

18.    That said new charter and the constitutional amendment approved November 2, 1920, now Sections 16 and 17 of Article IX, Constitution of Missouri, are not consistent with Sections 1 and 2 of Article XV of the Constitution of Missouri, and are inconsistent with Section 5912, Revised Statutes 1919.

19.    That said new charter and Section 16 of Article IV of said Constitution are invalid and inconsistent with Section 28 of Article IX of said Constitution.

20.    That Sections 417 to 425, both inclusive, of said new charter providing for election of councilmen from

certain districts of said city on the first Tuesday in November, 1925, are void because said districts have no legal existence.

Filed and exhibited with relator's petition is a printed copy of said new charter, marked "Exhibit A."

Respondents in their answer and return admit that Kansas City is a municipal corporation, that it has been governed by a special charter adopted August 4, 1908, that respondent Albert I. Beach is mayor and the other respondents are members of the upper and lower houses of the common council of said city; deny that they are unlawfully usurping powers and functions, and on the contrary claim that respondent Kansas City at a special election held in said city on February 24, 1925, adopted a new charter, which appears printed in relator's "Exhibit A;" state that said new charter was adopted as the charter of said Kansas City in all respects as required by law, and as provided by the Constitution of Missouri, and particularly Section 16 of Article IX of said Constitution as amended November 2, 1920; that on December 22, 1923, there was presented for filing to the Board of Election Commissioners of Kansas City a petition praying for a special election for submission to the voters of Kansas City, Missouri, of the question, "Shall a commission be chosen to frame a charter?" said petition (omitting signatures) being as follows:

We, the undersigned, qualified voters of Kansas City, Missouri, do hereby request that a special election be held in Kansas City, Missouri, for the purpose of submitting to the electors of said city the question, "Shall a commission be chosen to frame a charter?" that said petition purported to contain 31,203 signatures of qualified voters, and was duly filed by the said board of election commissioners for canvass; that thereafter on December 27, 1923, said board of election commissioners having canvassed said petition found that the same had been signed by twenty per cent of the qualified voters of Kansas City, Missouri, that the same was in all things sufficient, that the holding of a special election for the

purpose prayed in said petition was authorized and required by law, and said board ordered that a special election be held in Kansas City, Jackson County, Missouri, on Tuesday, the 26th day of February, 1924, for the purpose of submitting to the voters of said city the question, "Shall a commission be chosen to frame a charter?" that said board ordered that such special election be held in all of the election precincts of said city, that the polls be open for said election from six o'clock A. M. to seven o'clock P. M. of said day, that notice of said special election be given in two daily newspapers published in Kansas City, Missouri, for at least three weeks, the publication of said notices to be made at least once each week and on the same day of the week in each of the said three weeks, the last publication to be within two weeks of the day of such election, all as required by law, and that thereafter notice of said special election was published as directed by said board, a true and correct copy of said notice being attached to respondents' answer and return and marked "Exhibit A;" that said notice was published on the 4th, 11th and 18th days of February, 1924, both in the Kansas City Journal and the Kansas City Post, both of said newspapers having at said times a bona-fide sale or circulation in said city of more than 2,000 copies of each issue, both of said newspapers having been published continuously for fifty-two weeks next before the publication of such notice; that on the twenty-sixth day of January, 1924, there was filed with said board of election commissioners a petition nominating for the charter commission the following candidates, to-wit: Henry L. McCune, William E. Lyons, Louis R. Ash, Armwell L. Cooper, Sigmund Harzfeld, Anna C. Gilday, Henrietta H. Lyman, Eleanor Jones, Charles A. Sumner, Frank J. Moss, Joseph R. Gant, John P. Gilman, Herman M. Langworthy, and said petition further prayed that the names of said nominees be placed upon the ballot and voted upon at the election called to determine whether a commission should be chosen to frame a new charter, said petition being duly filed by the board for

Vol. 310]            APRIL TERM, 1925.                    555

State ex rel. Attorney-General v. Kansas City.

canvass, and thereafter the said board of election commissioners duly canvassed the same and found it to be sufficient and in proper form and order, and that the candidates named therein had the necessary qualifications, and said board thereupon ordered and directed that said candidates be placed upon the official ballot for submission to the voters on said 26th day of February, 1924; that thereafter, on February 5, 1924, said board of election commissioners selected voting places for the various precincts of the sixteen wards of said city, ordered that legal notice of such selection be published in the Kansas City Journal, the Kansas City Post, the Kansas City Star and the Kansas City Times, daily newspapers in Kansas City, Missouri, a true and correct copy of said notice being attached to respondents' answer and return and marked "Exhibit B," and said notice was duly published in the Kansas City Journal, the Kansas City Post, the Kansas City Times and the Kansas City Star on the 16th day of February, 1924; that pursuant to said notice a special election was duly held February 26, 1924, in Kansas City, Missouri,—the voters thereat using a ballot provided by said board of election commissioners in words and figures as follows, to-wit:

"OFFICIAL BALLOT

"Election February 26th, 1924

"Shall a Commission be chosen to frame a Charter?—Yes
"Shall a Commission be chosen to frame a Charter?—No
(Scratch one of the above)
"Henry L. McCune
William E. Lyons
Louis R. Ash
Armwell L. Cooper
Sigmund Harzfeld
Anna C. Gilday
Henrietta H. Lyman
Eleanor Jones
Charles A. Sumner
Frank J. Moss

Joseph R. Gant
John P. Gilman
Herman M. Langworthy
"INSTRUCTIONS TO VOTER

"Thirteen only to be elected. Make cross (X) in square opposite each candidate's name you wish to vote for.;"

that after said election was held the returns were duly canvassed by the board of election commissioners, and the board thereafter filed with the said city on March 6, 1924, its certificate which is recorded in Book 93, page 487, of the records in the city clerk's office in said city, certifying that a total of 42,716 votes were cast at said special election held as aforesaid on February 26, 1924, that upon the proposition, "Shall a commission be chosen to frame a charter?" 26,197 votes were cast in favor of the proposition and 16,519 votes against the proposition, and that said proposition had duly carried; that said board further certified the vote of the candidates above named to be the members of the charter commission, such certificate showing that each of said candidates received more than 20,000 votes and that each and all of said candidates were duly elected; that thereafter said members of said charter commission proceeded with the work of drafting a new charter for said city, and on January 22, 1925, filed with the city clerk of Kansas City a copy of said proposed new charter and on the same date also filed a copy thereof with the board of election commissioners of said city and requested the said board to call an election for the purpose of submitting to the electors of said city on February 24, 1925, the proposed new charter of Kansas City, Missouri, and said copy of said proposed new charter was accepted by said board of election commissioners and duly filed on January 22, 1925; that the Common Council of Kansas City, Missouri, thereupon passed an ordinance, which was approved on 27th day of January, 1925, providing for the special election to be held on Tuesday the 24th day of February, 1925, for the purpose of submitting said pro-

posed new charter to the electors of said city, and on the same day respondent, Albert I. Beach, as mayor of Kansas City, issued a proclamation for said election which was in words and figures as follows, to-wit:

"MAYOR'S PROCLAMATION FOR A SPECIAL ELECTION.

"Public notice is hereby given that in compliance with an ordinance of Kansas City, Missouri, No. 49390, entitled 'An Ordinance Providing for a Special Election to be Held on Tuesday, the 24th day of February, 1925, for the purpose of Submitting a Proposed New Charter to the Electors of the City,' approved January 27th, 1925, a special election is hereby ordered to be held in Kansas City, Jackson County, Missouri, on Tuesday, the 24th day of February, 1925, for the purpose of submitting said proposed new charter to the electors of the city.

"Witness my hand and seal of Kansas City, Missouri, this 27th day of January, 1925.

(Seal)                          "A. I. BEACH, Mayor.

"Attest:        Michael J. Pendergast, City Clerk;" that a copy of said ordinance and a copy of said proclamation were both filed with said board of election commissioners on January 27, 1925, and thereupon said board ordered that a special election be called for the 24th day of February, 1925, to vote on the following proposition:

"Shall the proposed new city charter for Kansas City, Missouri, framed and submitted by the Charter Commission elected February 26, 1924, be approved and adopted?" that said board of election commissioners adopted an official ballot for said election as follows, to-wit:

"OFFICIAL BALLOT

"For the Special Election held February 24, 1925, for the purpose of Voting on the Proposition to Adopt a New City Charter.

"PROPOSITION

"Shall the proposed new City Charter for Kansas City, Missouri, framed and submitted by the Charter

Commission elected February 26, 1924, be approved and adopted? YES—NO.

"(Scratch one of the above)"

and ordered that the same be printed and distributed to various precincts in the various wards in said city for use at said election February 24, 1925, and thereafter, on January 30, 1925, said board of election commissioners passed upon the polling places in the various precincts of the different wards for said election to be held on 24th day of February, 1925, and selected and designated such polling places and directed that notice of the location thereof be published in the Kansas City Times, the Kansas City Journal, the Kansas City Star and Kansas City Post on January 31, February 7 and February 14, 1925, a true and correct copy of said last-named notice being attached to respondents' answer and return, made a part thereof and marked "Exhibit C;" that said notice was thereafter duly published in said newspapers of the above-mentioned dates designated and ordered by said board, and thereafter on February 24, 1925, the election to determine whether or not the proposed new city charter should be approved and adopted was duly held, the voters thereat using in voting on the proposition the official ballot above mentioned; that thereafter on February 27, 1925, said board of election commissioners met and canvassed the returns of said election and made a re-count of the vote cast, certifying that the total number of electors of said city voting upon said proposition was 46,385, that the total number of electors of said city voting in favor of said proposition was 37,504, that the total number of electors of said city voting against said proposition was 8,827, and that said proposed new charter was approved and adopted by a majority of electors of said city voting on the proposition of whether or not said charter should be adopted; and respondents state that the said new charter consisting of 488 sections was duly and legally framed and adopted in the manner aforesaid, and in accordance with the pro-

visions of Section 16 of Article IX of the Constitution of Missouri as amended November 2, 1920, and is in all respects a binding, legal and valid charter of respondent, Kansas City, Missouri, and the respondents in carrying out and putting in effect its provisions, as they are proceeding to do, are in the performance of their lawful duties and are exercising legal functions.

Respondents in their said answer and return further admit that the final draft of said new charter was signed by only ten of the thirteen persons who were elected members thereof, but that all thirteen of said members of said commission participated in the work of framing said new charter; and that Charles A. Sumner, one of the members who did not sign, participated in such work until the charter was completed, but happened to be absent from the city when it was finally signed and telegraphed his approval of said proposed new charter; that Joseph R. Gant, another member who did not sign, after participating for a considerable time in the work of framing said charter, became ill, and thereafter resigned; and that John B. Gilman, another member of the commission who did not sign, actively participated in the work of framing said charter, but died before such work was finally completed; and respondents deny that such facts admitted and stated in any way render said charter invalid, illegal or void.

Respondents in their said answer and return further deny that said new charter, or any part thereof is nugatory, invalid, illegal or void for the reasons, or upon the grounds set forth in the petition or information herein, and respondents say that said charter and every part and section thereof is consistent with the Constitution and laws of the State of Missouri and that the same and every part and section thereof is valid, legal and effective as the charter and organic law of Kansas City, Missouri, and respondents pray that the petition herein be denied and that the writ issued herein be quashed.

Relator's reply denied each and every allegation of fact contained in respondents' answer and return.

The following stipulation of facts (omitting caption, date and signatures) was filed:

"It is hereby stipulated by and between the parties hereto as follows:

"1.   That all matters of fact well pleaded either in relator's petition or in the answer and return of the respondents shall be taken as true.

"2.   That there was no intermediate registration or revision of registration preceding the special election held on the 26th day of February, 1924.

"3.   That there was no intermediate registration or revision of registration preceding the special election on the 24th day of February, 1925.

"4.   That the city council of said city did not adopt an ordinance calling or providing for the holding of the special election held on said 26th day of February, 1924.

"5.   That the number of signatures on the petition filed on the 26th day of January, 1924, with the board of election commissioners, did not in number constitute two per cent of the then qualified voters of said city as based on the total number of votes of electors voted at the last preceding general municipal election, but such signatures did exceed the number of one thousand.

"6.   It is hereby stipulated that this cause may be submitted to the court after argument on the 24th day of June, 1925, on the pleadings, consisting of the petition of the relator, the answer and return of the respondents and the reply of the relator thereto, and the foregoing stipulation of facts."

Respondents do not controvert the propositions stated in Paragraphs I and II of relator's brief, that *quo warranto* is a proper remedy to test the rights and powers of respondents under the new charter and that the status of a city is subordinate in the scheme of state government.

I.   The first ground of invalidity pleaded by relator is that Section 486 of the new charter conflicts with Section 16, Article IX, of the Missouri Constitution as

Operative
on Different
Dates.

amended November 2, 1920, and is void, because it provides that certain sections hereinabove enumerated and abstracted go into effect February 24, 1925, immediately upon the adoption of the charter, and that the remaining sections of said charter go into effect at 10:00 A. M., April 10, 1926.

It is familiar law that a statute or a constitutional provision may have a potential existence though it will not go into operation until a future time. [State ex rel. v. Dirckx, 211 Mo. 568, l. c. 578; Poindexter v. Pettis Co., 246 S. W. 38, l. c. 40; State ex rel. Brunjes v. Bockelman, 240 S. W. 209, l. c. 211.] Where not prohibited by the Constitution, the Legislature may direct that different parts of the same statute shall go into effect at different times, and even under constitutional provisions requiring all parts of a statute to take effect at the same time, it is sufficient that the statute becomes effective as an entirety at one time, notwithstanding that, as to some persons or matters affected by it, the statute becomes operative at different times. [36 Cyc. 1201.] The time a particular statute shall take effect may be fixed by another statute passed at the same session. [Honeycutt v. Ry. Co., 40 Mo. App. 674, cited with approval in State ex rel. Brunjes v. Bockelman, supra.]

The constitutional provision here in question is a part of Section 16, Article IX, Constitution of Missouri, as amended November 2, 1920, and reads as follows:

"If any such proposed charter be approved by a majority of the electors voting on the proposition of whether or not such charter shall be adopted, it shall become the charter of such city at the time fixed therein and shall supersede any existing charter and amendments thereof."

Does this provision interdict the purpose of Section 486 to make parts of the new charter effective February 24, 1925, the date of its adoption, and postpone the effective date of the remainder until April 10, 1926? Relator contends that it does, and strongly urges Miami.

309 Mo. Sup.—36.

Co. v. Hiner, 54 Kan. 334, Finnegan v. Sale, 54 Kan. 420, and State v. Deets, 54 Kan. 504, as supporting authorities, conceding that the adjudicated cases present only one State Constitution, that of Kansas, containing a provision similar in form. The Kansas provision is a part of Section 19, Article 2, of the Constitution, and reads as follows: "The Legislature shall prescribe the time when its acts shall be in force, and shall provide for the speedy publication of the same."

In Miami Co. v. Hiner, 54 Kan. 334, the Supreme Court of Kansas construed the above in connection with a special act of the Legislature approved March 8, 1893, the last section of which was as follows: "This act shall take effect and be in force from and after its publication in the statute book, and after January 8, 1894, except the county treasurer hereinbefore named, which shall take effect as to said county treasurer after October 10, 1893."

Following the previous case of Cherokee Co. v. Chew, 44 Kan. 162, the court held that the above constitutional provision required "that the Legislature shall fix a single definite time when its act as an entirety shall become a law," stating that "according to the practice and legislative course in this State the last section of every act fixes a definite time when the act as a whole shall go into effect." Observe that the court there construed a general provision mandatory in form, intent and substance, in connection with an avowed state practice and legislative course. Here we are called upon to construe a special provision permissive and enabling in character, in fact, a special grant of power, formerly retained and exercised by the State, to fix the time when the proposed charter, if adopted, shall become the charter of said city. We have no avowed state practice and legislative course "fixing a definite time when the act as a whole shall go into effect." In this State it is a very common thing for an act of the Legislature to provide that different parts thereof shall become effective on different dates. The supposed resemblance between the

two cases is thus more apparent than real. Probably the uncertainty of its date of "publication in the statute book," considered in connection with the different definite dates of October 10 and December 31, 1893, all referred to as effective dates of said act or some part thereof, moved the court to declare that an approval of the act "would bring great uncertainty and much confusion." However, in thus construing a provision so unlike the Missouri provision and with an entirely different purpose and setting, the court did not fail to state "that acts are frequently passed, in the body of which provision is made that they shall act upon certain classes and communities at different times, and upon the happening of certain contingencies." A necessity was thus recognized which created an exception even to the court's rigid construction of this mandatory provision, and this necessity has since become so obvious and the exception so broad that in the subsequent cases of State v. Newbold, 56 Kan. 71, and State ex rel. v. Meek, 86 Kan. 576, the strict interpretation relied on by relator has been much relaxed, if not abandoned. At any rate, the cases cited are not deemed persuasive or controlling here, and the companion authorities presented are even less in point.

There is no other constitutional provision and no statute relating to the time when the proposed charter, if adopted, becomes the charter of such city. Absent constitutional or general statutory provision fixing such time, the proposed charter would become the charter of such city on the date of its adoption, unless otherwise provided therein. [25 R. C. L. 796.] Undoubtedly the proposed charter might have contained a lawful provision that from and after its adoption it should become the charter of Kansas City, and also an appropriate provision postponing the operation of one or more sections thereof until some future definite date. As a matter of fact this is exactly what was done when it was provided in Section 486 that certain sections should "take effect immediately upon adoption" and the effective date of the

charter as a whole postponed to April 10, 1926. The proposed charter became the charter of Kansas City on February 24, 1925, the date of its adoption, which was "the time fixed therein" when a part thereof became effective. A statute speaks from the time it commences to take effect. This is in harmony with State ex rel. v. Bockelman, 240 S. W. 209, and cases cited therein. The new charter supersedes the "existing charter and amendments thereof" as and when its provisions take effect. Such a course is commonly pursued in the legislative practice of this State and its legality has never been questioned. When the city charter of 1908 was adopted the operation or effective date of certain sections was postponed for many months, although under the Constitution as then in force the proposed charter became the charter of Kansas City "at the end of thirty days" after its adoption. It was none the less the charter of Kansas City because a part or parts thereof were not yet in effect. No confusion or uncertainty resulted. It could not have been done otherwise and preserve the continuity of an intricate form of city government. The very necessities of the instant case required that such be done. To hold that the constitutional amendment of 1920 requires that a city charter thereafter adopted should go into effect only as an entirety on a certain single day and not become the charter of such city until such day, would be to destroy its adaptability and usefulness. Section 486 of the new charter follows the approved legislative practice of this State, and contravenes no statute or constitutional provision to which our attention has been directed.

II. Relator's last or twentieth ground of invalidity pleaded is closely related to the above and will be considered now. It is that the election of councilmen for certain districts proposed to be held on the first Tuesday in November, 1925, under the provisions of Sections 417 to 425, both inclusive, of the new charter, will be illegal and void because said dis-

Election Districts.

tricts have not been created or defined by any law or ordinance of said city and have no legal existence. The objection is apparently grounded in the fact that Article II of said charter and particularly Section 7 thereof fixing the boundaries of the four city districts of Kansas City was not expressly directed by said charter to become effective at or prior to the date of said proposed election. Section 425 reads as follows:

"The nomination and election of officers to serve for terms commencing April 10, 1926, shall be governed by the provisions of this charter.

"In the event that the whole or any part of the provisions for nominating and electing city officials herein made shall be held by final court decision to be in conflict with any law of the State necessarily applicable thereto, the part or parts so held to be in conflict shall become operative at such time as the conflict may be removed."

Should the whole or any part of Sections 417 to 425 be deemed in conflict with any law of this State, such conflict might result in the postponement of the first regular municipal election under the new charter until the remainder of said charter goes into effect, but would not necessarily render the charter invalid.

A statute will not be held unconstitutional or void because of mere omission of details necessary to accomplish its evident purpose if such details can be supplied by reasonable implication. In the case of Boonville v. Ormrod's Administrator, 26 Mo. 193, this court held that although the provisions of a statute did not expressly require notice of condemnation proceedings, the Legislature contemplated that notice should be given interested parties, as otherwise the statute would be unconstitutional and proceedings thereunder void. The requirement of notice was implied from the purpose of the statute. Where the intention to effect a certain purpose is clearly expressed, or clearly appears, the implication necessarily arises that the law-making authority intended to provide for such details as may be necessary to accomplish the purpose. The principle is thus stated

in 25 Ruling Case Law, p. 978, par. 228: "Where the whole context of the law demonstrates a particular intent to effect a certain object, some degree of implication may be called in to aid the intent; for the statute often speaks as plainly by inference and by means of the purpose which underlies it as in any other manner. That which is clearly implied is as much a part of a law, and is as effectual, as that which is expressed."

It was clearly the intention and purpose of the charter commission to provide all details necessary to put in operation a new charter in the place of the old one without any break in the continuity of the city government. New officers must be elected in advance of the effective date of parts of the new charter. Obviously the provisions of the old charter must remain in force until superseded by the actual operation of the new. The provisions of the old charter dividing the city into sixteen wards, each with a member of the lower house of the common council, could not be wholly abrogated until the members of the council from the four new districts were elected and ready to function in their stead, and yet, for the purposes of the proposed election at which these new councilmen were to be chosen Section 7 of the new charter creating and fixing the boundaries of the new districts must be effective. The framers of the new charter doubtless had this exact situation in mind and purposed that it be met in the operation of Section 7 by necessary implication to the extent that its operation should become necessary to effectuate the purposes of Sections 417 to 425. Indeed, this purpose is evident if not compellingly expressed in the first sentence of Section 425 which reads: "The nomination and election of officers to serve for terms commencing April 10, 1926, shall be governed by the provisions of this charter." All the details and resources provided by the charter and necessary to effectuate the full purpose of the proposed election are here called into action and made effective.

Pash v. City of St. Joseph, 165 S. W. 710, cited by relator, is not in point. In that case the statute provid-

ing for the creation of city parks directed that park districts should be laid out by ordinance upon recommendation of the board of park commissioners. Condemnation proceedings were instituted about a year before the ordinance was passed establishing the park districts. Here the council districts are established and their boundaries defined in Section 7 of the charter. The only question is whether for the purposes of the proposed election in November, 1925, this section is operative. It may be inferred from the language used in Section 425 that Section 7 is thus operative. It must necessarily be implied from the clear purpose and intent of Section 417 to 425, and we so hold. In the language of Judge LAMM, applying the same principle for this court in State ex rel. v. City of St. Louis, 145 S. W. 801, l. c. 807: "We are not by speculative refinements, in getting at and enforcing the intendment of the law-maker, to hold his intendment vicious, or his law as amounting to nothing at all, unless we are pricked on and goaded thereto by imperative reasons—reasons we cannot find in the case at bar."

Reason numbered 2 in relator's petition is without support because it proceeds on the theory that the sections specially named in Section 486 as becoming forthwith effective are tendered as amendments to the old charter, which theory is expressly disclaimed by respondents.

Relator's contention numbered 3, that the election of February 26, 1924, is void because it was not provided for by city ordinance, is also briefly met by reference to respondents' answer and return showing that this election was held pursuant to petition signed by twenty per cent of the qualified voters of Kansas City and filed with the board of election commissioners. This procedure was in full compliance with one of the methods of submission prescribed by Section 16, Article IX, of the Constitution, and a city ordinance under the old charter providing for such special election was not necessary, nor is said constitutional amendment open to objection because it provides two methods of submission.

III.   Relator's objections numbered 4, 5, 13 and 14 charge that said election of February 26, 1924, is void because, (a) the voter was compelled to vote in the negative on said question or consent that the thirteen candidates become the commission to frame the charter, (b) the proposition thus submitted

Doubleness.

was double, (c) the question whether a commission should be chosen to frame a charter, and the names of thirteen candidates, for membership on said commission, were submitted at the same time, at the same election and on the same ballot, and (d) Section 16, Article IX, of the Constitution is insufficient to provide suitable machinery for political action of electors in the free choice of separate issues necessary to be submitted.   These objections are closely related and may be considered together.

The election of February 26, 1924, conformed to the initiative method provided by Section 16, Article IX, of the Constitution, as amended November 2, 1920.   Prior to this amendment the Constitution provided that such city could frame a charter by ''causing a board of freeholders, who shall have been for at least five years qualified voters thereof, to be selected by the qualified voters of such city at any general or special election.''   This board of freeholders was thereby empowered to draft the new charter, and it was in fact a charter commission. In voting for or against this board the voter necessarily voted either for or against the proposition whether a board of freeholders (commission) should be chosen to frame a charter.   The legality of this procedure was never questioned, nor could it be with sound reason.   The two matters constituted but one subject and were then as now necessarily conjoined in fact and properly submitted together.   The mere fact that at the election of February 26, 1924, the names of only thirteen candidates appeared on the ballot only indicated a failure of the electorate to exercise more freely its initiative power, and in no way affected the validity of the election.   The constitutional amendment of 1920 provides suitable and

adequate machinery for the free choice of the electors on all issues necessary to be submitted.

The same course of reasoning leads us to the conclusion that the proposition submitted at the election was not double. The cases of State ex inf. v. Maitland, 296 Mo. 338, l. c. 358, and Gabbert v. Ry. Co., 171 Mo. 84, l. c. 96, are cited as authority to the contrary. In the former case a single amendment to the city charter submitted, (1) the creation of a water commission, (2) the creation of a fire department, (3) the naming of water commissioners for unprecedented terms with power to name their own successors for a long period of time, though the ballot on its face did not inform the voter that he was electing these men to office; and all this in the face of the fact that under Section 35, Article 3, of the then existing Charter of 1908, the right to create offices and fix salaries and terms was given to the common council. These were facts considered in the Maitland Case, the like of which do not appear in the case at bar. True, the court said in the Maitland case that "the creation of an office, and the filling of an office, are two separate propositions, and if so this Amendment No. 1 was void for doubleness," but the choosing of a commission to frame a charter is not the creation and filling of an office as therein contemplated. The distinction clearly appears in a study of Barker v. State, 69 Ohio St. 68, 68 N. E. 575, where the term "office" is defined with extreme liberality. In the first part of the opinion the view is expressed that the members of the Board of Revision of the City of Sandusky, which was a permanent body created by statute with power to sit in review, investigate and report once each month to the city council on the proceedings of the council and all departments of the city government, were officers. The writer, however, was unwilling to ground his opinion in this view and the case finally went off on the holding that the members of this board were nevertheless city officers, even though their membership on this board did not in itself make them such. Evidently the word "office" as used in

the Maitland case means a right conferred with some degree of permanence and for a definite term to exercise generally some portion of the sovereign power of the State, and the term "officers" as there used does not extend to persons temporarily chosen for a single and transient purpose, as were the members of the charter commission. No good purpose could have been served by voting on the matter piecemeal. It was a single matter and was properly so submitted. In Gabbert v. Ry. Co., 171 Mo. 84, l. c. 96, cited by relator, it is said that "there is no prohibition in our Constitution or laws against the submission of any number of amendments in the same ballot," and the opinion goes only to the point that separate constitutional amendments so submitted should be separately numbered, as "first," "second," etc. There was no error in here submitting the whole matter at the same election, at the same time and on the same ballot.

IV. Relator cites no authorities in support of objection numbered 6, that Section 16, Article IX, of the Constitution is not self-executing and that the Legislature has not enacted an enabling statute. Presumably this point is abandoned, and properly so, because such enabling act is found at pages 110, 111, Laws 1921, First Extra Session.

Enabling Statute.

Objection numbered 7 is that Section 16, Article IX, of the Constitution is inconsistent in that one sentence thereof reads as follows:

Number of Signatures.

"Candidates for the proposed commission shall be nominated by petition signed by not less than two per cent of the qualified voters of such city, and filed with the board of election commissioners, or other officials having charge of municipal elections in such city, at least thirty days prior to such election; provided, that in no case shall the signatures of more than one thousand voters be required to nominate a candidate."

The provision clearly means that if two per cent of the qualified voters of such city equal or exceed one thou-

sand in number, only one thousand signatures would be necessary, but if two per cent do not number as much as one thousand voters, then at least two per cent of the qualified voters would be required to sign such petition. There is no inconsistency.

V.   Objections numbered 8, 9 and 10 are leveled at the provisions of the new charter which arrange, classify and distribute the powers of city government in a manner different from the provisions of the Charter of 1908.

Separation of Governmental Function.

Articles II and III of the new charter providing for a departure from the bicameral or two-house council and for the enlargement of the administrative service, particularly through the appointment of a city manager, are special objects of attack, and the merits of the old system as against the suggested weaknesses of the new are strongly presented.   We shall not invade the legislative field by considering the relative merits of the two systems.   Suffice it to say that we find no constitutional or statutory provision now in force which requires that the council shall consist of two houses. It is significant that for many years the city of St. Louis has been operating unchallenged with a council consisting of but one legislative house created under Section 22, Article IX, of the Constitution, directing that its "charter shall be in harmony with and subject to the Constitution and laws of the State, and shall provide, among other things, for a chief executive and at least one house of legislation," although Sections 17 and 20 of the same article expressly provided for two houses of legislation.   This provision of Section 17 was dropped out in the constitutional revision of 1920, so that the only constitutional provision now providing for a two-house council is found in Section 20 which purports to apply only to the city of St. Louis, and this was apparently superseded by Section 22 of the same article. Furthermore, the validity of what is known as the commission form of government was expressly recognized

by this court in Barnes v. City of Kirksville, 266 Mo. 270, and is now in operation without challenge in a number of cities in this State.

It is also urged that the new charter sets up a form of city government inconsistent with and foreign to our State Constitution and particularly repugnant to Article III thereof, which is as follows:

"The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted."

Speaking through Judge GANTT in Rhodes v. Bell, 230 Mo. 138, l. c. 150, this court said: "The purpose which the people had in view in keeping separate the different departments of government is well known to have had its origin in the jealousy of the framers of our State and Federal governments and the great solicitude to keep them separate in order to preserve the liberty of the people. . . . But notwithstanding the purpose of the people in the framing and adoption of our constitutional provision to keep the several departments of our State government separate and independent in the spheres allotted to each, a careful study of the whole Constitution will, we think, demonstrate that it was not the purpose to make a total separation of these three powers." Without here expressing any opinion as to whether or not above Article III of the Constitution governs the distribution of powers in municipalities we may observe that such separation and distribution is generally recognized in the new charter, although in substance it adopts the commission form of government. As above indicated, the wisdom or folly of such change is a legislative question. The development of this form of municipal government is fully discussed in 19 Ruling Case

Law, sec. 51, pp. 745, 746, and its constitutionality has been generally upheld. This point is also ruled against relator.

Relator also pleads in objection numbered 11 that the elections of February 26, 1924, and February 24, 1925, are invalid because certain newspaper notices relating thereto were not published. This objection is apparently fully met by the facts shown in respondents' answer and return, and it is not pressed in relator's brief. This point is ruled against relator.

**Published Notice.**

Objection numbered 12 recites that by Articles IX and X of the new charter the city is given authority to establish levee districts, flood protection works, and traffic ways, and that respondents in putting the new charter into effect will impose heavy burdens on the owners of property, in violation of Sections 10, 15 and 30, Article II, of the Missouri Constitution, providing that courts of justice must be open, that no *ex post facto* laws shall be passed, and that no person shall be deprived of life, liberty or property without due process of law. Relator also pleads violation of Section 1 of Article XIV of the Constitution of the United States, known as the due-process provision. In our opinion these provisions of the new charter violate none of these constitutional guaranties.

**Due Process.**

In objection numbered 15 relator vigorously contends that Section 125 of the new charter, which provides against restoration to office of or payment of salary or compensation to any person, after February 24, 1925, claiming to have been unlawfully removed or discharged from any office or position in the competitive class of the civil service prior to the first day of January, 1925, also violates the above constitutional provisions. The fallacy of relator's claim is uncovered by the fact that the status of the persons contemplated by Section 125 was necessarily fixed under the civil service law of the old charter,

**Civil Service Employees.**

which was simply the direct legislation of the people of Kansas City. The adoption of the new charter is directed legislation by the people of Kansas City of the same kind and of equal dignity but subsequent and therefore paramount and controlling. The rights of such persons are subject to the will of the same power that created them. This would not be so if such persons had a vested right in the civil service law of 1908 under which they came by their jobs, but they have no such vested right. On this subject the law is plainly written. 6 Ruling Case Law, sec. 296, p. 309, reads: ''There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal.'' [See also, State ex. rel. Attorney General v. Davis, 44 Mo. l. c. 130.]

In adopting the new charter the people of Kansas City were legislating for themselves, and under the authorities cited their action is not in conflict with the Constitution and laws of this State. Relator seeks to preserve and continue in force an alleged right after the law which is supposed to authorize the same is repealed and superseded by a new law which in no uncertain language terminates such right, if it ever existed. As above shown, there is no destruction of a vested right. Nor is there any impairment of an existing obligation or denial of the right to contract, and the case of State v. Loomis, 115 Mo. 307, and like authorities cited, have no application to this case.

VI. Relator's seventeenth ground is that said election of February 24, 1925, is void because it was not preceded by an intermediate registration as required by act approved March 14, 1921, Laws 1921, page 355, as amended by the act approved November 28, 1921, Laws 1921, Second Extra Session, pages 34 and 35, and as required by Section 8887, Revised Statutes 1919. In support thereof relator cites Chillicothe ex rel. Meek v. Henry, 136 Mo. App. 469; St. Louis v. Dreisoerner, 243 Mo. 217; Ex parte Tarling,

<div style="margin-left:0">Registration of Voters.</div>

241 S. W. 929, l. c. 932; and St. Louis v. Boskowitz, 273 Mo. 542. These cases determine the validity of charter provisions or city ordinances adopted under constitutional provisions or state laws admittedly relevant thereto. In other words, the question was whether or not such provisions were consistent with the Constitution and laws of this State then relevant thereto. Relator's objection here involves the construction of no charter provision or ordinance. The whole matter is determined by the relevancy of certain laws to the registration necessary in the execution of Sections 16 and 17, Article IX, of the Constitution, as amended in 1920.

Relator contends that a special registration must precede a charter election under Section 8887, Revised Statutes 1919, which section reads as follows:

"For the purpose of keeping said lists of qualified voters complete, the said officers of registration shall forthwith, upon the time being fixed for holding an election at which such proposed charter shall be submitted to the qualified voters of such city, proceed to register the names of such persons as shall be entitled to registration, and whose names are not upon the lists of either precinct; and such supplemental lists shall be delivered to the city clerk, and the provisions of this article in regard to said general registration shall be applicable to these special registrations, and to the use and control of said lists, as near as may be."

Is Section 8887 now relevant and controlling in the execution of said constitutional amendment of 1920? This section was enacted in 1887 (Laws 1887, p. 42) as a part of an enabling act empowering cities having a population of more than one hundred thousand inhabitants to frame and adopt charters. It was the first law of its kind in the State and it must be construed with the election laws as they then existed, and in connection with which the enabling act was made available. In this act reference is made to "the acting chief officer of registration," and by reference to the Election Act of 1883

(Laws 1883, p. 38), which was then in effect, it appears that such officer was a recorder of voters. Section 1 of the act further provided that "registration shall be had under the provisions of this act and not otherwise." It is clear that this was the election machinery contemplated by the Act of 1887, but the election law of 1883 being incomplete, it was deemed necessary to include in the Enabling Act of 1887 some sections pertaining to registrations and elections, among which was above Section 8887. However, in 1895 the election laws of this State were completely revised and for the first time the duty of performing all details of registration was placed with election commissioners. [Laws 1895, Special Session, page 5.] Section 1 of this act provided that the registration of voters and the conduct of elections in cities having over one hundred thousand inhabitants "shall be governed by the provisions of this act." Said act further expressly abolished the office of recorder and deputy recorder of voters and expressly repealed "all acts and parts of acts inconsistent with this act." This law completely supplanted the provisions of the Act of 1883, and after its adoption the registration of voters in Kansas City was properly conducted thereunder. We find no authority to the contrary.

The above Act of 1895 became Article 11, Chapter 102, Revised Statutes 1899, was carried forward in the revision of 1909 as Article 14 of Chapter 43, and again appeared as Article 16 of Chapter 30, Revised Statutes 1919. The election law governing cities of one hundred thousand inhabitants or more was again revised in 1921 (Laws 1921, p. 330) by the repeal of the entire article and the enactment of a new article in lieu thereof, which as amended at the second special session of the General Assembly in 1921, now covers the whole field and governs elections in cities of this class.

Though the above Section 8887 be not here relevant, yet relator contends that under Section 35, Article 16, Chapter 30 as revised in Laws 1921, page 330, and in

Laws 1921, Second Extra Session, page 34, there should have been a revision of the last general registration before the charter election was held. This section, however, must be construed in connection with other parts of the act. Section 40 thereof expressly provides that such previous revision of registration shall not be held to submit a proposition or amendments to a vote of the people. This was a special election held to submit the proposition of whether or not the proposed charter should be adopted. The fact that said charter contained, among other things, authorization for the city council "to borrow money to meet the cash requirements of the general fund in anticipation of the receipts from the revenues for the current fiscal year," the aggregate amount of such loans at no time to exceed twenty-five per cent of the estimated general fund revenues for the fiscal year then outstanding and uncollected, all such loans to be repaid out of the receipts from revenues of the fiscal year in which they should be incurred, and to become due within three months from the date of incurring the same, does not bring this election within the proviso of said Section 40, that a previous revision of the registration is necessary "at any special election at which is to be submitted a proposition to increase the indebtedness of any such city, by borrowing money." Providing the machinery for procuring temporary loans should they be needed in the future is not submitting a proposition to increase the indebtedness of the city within the meaning of this statute. Relator's contention is overruled.

Relator's remaining grounds are numbered 18 and 19. They attack the new charter and Sections 16 and 17, Article IX, of the Constitution as amended in 1920, as invalid because in conflict with Sections 1 and 2 of Article XV and Section 28 of Article IV of said Constitution, and with Section 5912, Revised Statutes 1919. Sections 1 and 2, Article XV, of the Constitution relate to the matter of proposing, publishing and submitting constitutional amendments, Section 28 of Article IV pro-

310 Mo. Sup.—37.

vides that bills, with certain exceptions, must contain but one subject, and Section 5912, Revised Statutes 1919, is a part of the initiative and referendum chapter and relates to the submission of conflicting amendments to the Constitution. Said amendment of 1920 is not in conflict with the above constitutional and statutory provisions. There is no merit in relator's claim that said amendment submitted more than one subject improperly joined because it provided two distinct and separate methods of initiating a charter election, one by ordinance and one by initiative petition, or because it submitted the question whether a commission should be chosen to frame a charter and the names of the candidates for membership on the charter commission at the same election. The same arguments were advanced by relator in attacking the new charter under objections numbered 4, 5, 13 and 14. These points are hereinabove fully discussed and ruled against relator. It is unnecessary to go over the same ground again. Said constitutional amendment of 1920 is not objectionable for any reason that has been brought to our attention.

For the reasons above stated the writ issued herein is quashed and the proceeding dismissed. *Blair* and *Ragland, JJ.,* concur; *White, J.,* concurs in the result; *Graves, C. J.,* and *Woodson* and *Walker, JJ.,* dissent.

GRAVES, C. J. (dissenting).—I dissented to the opinion of my learned brother writing for the majority. I emphasize majority, because this is a four to three opinion—three for the opinion, one for the result of the opinion, and three dissenting. This dissent should have appeared sooner, but for two sufficient reasons, (1) the majority opinion was presented but a few days before the vote was taken, and there was no real time for mature consideration, and (2) because since the adoption of the opinion leave was given to file additional briefs to the parties, and to *amici curiae,* and the time given has just expired. My dissent was based upon what examina-

tion I was able to give the case after the opinion (for the majority) was written, and before its adoption. The time was short for a case of this character, and not such as to give even one upon the ground, time for deliberate consideration. However, subsequent thorough investigations have convinced me that my first impressions were right. In a case of this importance the reasons for a dissent should appear. To fulfill this obligation of myself to the public, this dissent is penned.

I.   At the threshold of this case is thrust upon us a vital question which goes to this charter as a whole. Was it framed and presented by such a body as the Constitution of this State provides? New Section 16, Article IX, of the Constitution, adopted in November, 1920 (Laws 1921, p. 701-2), provides for a charter commission of thirteen members to frame a new charter for a city of the class to which Kansas City belongs. Such a commission is not only to frame the charter, but is empowered to fix the date therein, when such charter (not fractions thereof) shall be voted upon and adopted or rejected. Concerning the charter proposed by such commission the Constitution (Sec. 16, supra) further provides: "If any such proposed charter be approved by a majority of the electors voting on the proposition of whether or not such charter shall be adopted, it shall become the charter of such city at the time [not times] fixed therein and shall supersede any existing charter and amendments thereof." The charter finally submitted was signed by but ten members of the elected charter commission. The charter commission elected by the people did not submit it, or present it. One had died, one had resigned, and a third had not signed. The instrument presented as a charter was not therefore one coming from the elected charter commission. This is a constitutional commission selected by the voters to outline a charter for the people to adopt or reject. When the Constitution speaks of the com-

*No Charter Proposed.*

mission, it speaks of thirteen members and not of ten members. It is in no sense a legislative body to be governed by rules of Parliament or of Congress. The law-making power is vested in the people. These thirteen are selected by the actual law-makers to propose a charter for their adoption, not to perform the legislative act of adoption. The material point is that it is not a legislative body, and the instrument creating it does not place it under rules applicable to such bodies. The commission is elected to thresh out and agree upon a proposed charter, and not to make one. The voters make it. The people are entitled to an instrument threshed out and agreed upon by their commission, and not by a fraction thereof. If ten of the thirteen could submit a proposed charter, simply because such number constitutes a majority of those then acting upon the commission, then the people lose the concerted action of their elected commission. If ten was authorized to submit the charter, then a much less number could have done so, under the idea of a majority rule. Say that all had resigned or died, except three, then under the majority rule, two of these three could present a charter, when under the Constitution the people were entitled to the judgment of their thirteen elected men. Going further, if all resigned except one, and that one framed a charter, then under the claim of respondents such single man would be the charter commission, with all the duties and powers of thirteen men. No reasonable construction of the Constitution will go that far. The only theory offered to support the rule of the majority is based upon rules applicable to legislative bodies, and the charter commission is not a legislative body and cannot be such under the constitutional provision giving it life and existence. The duly elected charter commission never presented a proposed charter, and hence there was no such instrument upon which the people (the only law-makers) could vote. For this reason alone there was no new charter presented, and per force of that fact, none adopted. It had to

be presented by a constitutional body, before it could be adopted. That constitutional body was thirteen men, and not a mere majority thereof. Had the Constitution-makers desired that a majority of thirteen should present and propose a charter, they would have said so in the instrument. There are those who would cut from our form of government all objectionable (to their way of thinking) features of the organic law, but I am not of that school. With me the organic law comes first. Its strict letter must prevail, if a republican form of government is to prevail for any substantial length of time. A charter commission of ten is not the constitutional charter commission of thirteen. But it may be urged that thirteen commissioners cannot all agree. Grant it to be so, but that does not change the organic law. There was a purpose in the restriction, and that purpose was to have the concurrence of thirteen men as to what would be proper for the fundamental law of the city. Under the contention of respondents, if all resigned but one, there would yet be a charter commission (of only one), when the organic law contemplated that the people, before voting, should have the concerted judgment of thirteen of their best citizens. We are of the opinion that no new charter was ever legally presented to the people of Kansas City. It required the full commission to present such a charter, and such was not done. Not only so, but new Section 16 of Article IX of the Constitution required the charter commission to fix a date for the election. The elected charter commission did not do this act. Only a part of such commission acted.

II. Passing for the moment the question as to whether or not there is a new charter at all, we go to the ruling of my learned brother, who writes for the majority. It is not exactly clear as to what the ruling is, but as best I gather it, the opinion holds that there are now districts in Kansas City from which members of the council can be nominated and elected. These supposed districts

Section 7 Inoperative Until April 10, 1926.

are created, if at all, by Section 7 of the proposed new charter. The location and boundaries are fixed by said Section 7. Section 486 of the said proposed charter provides: "Except Sections 98, 108, 125, 417 to 425 inclusive, 457, 458, 486 and 488, all of which shall take effect immediately upon adoption, this charter shall take effect at 10:00 A. M. April 10th, 1926."

It should be noted that Section 7, which creates and defines the districts, is not one of the divers sections which are declared to be in immediate effect upon the adoption of the proposed charter. If Section 7 ever becomes effective, the date by the charter-makers fixed is April 10, 1926, at ten o'clock A. M. of that day. This is the date fixed by that portion of the charter commission which reported the charter, and this is the date fixed by the electors (about twenty per cent of the whole electorate) who adopted the alleged charter. There is no ambiguity or uncertainty about the language used in Section 486, a part of which is quoted, supra. It is in plain and simple language, clear of meaning, and must be construed as it reads. Courts cannot legislate, nor is there room for construction, when the language of the law is plain and unambiguous. Had either the framers of the instrument, or the people who voted for it, had a desire to put Section 7 in force at once, it would have been written therein, as were the other excepted sections, supra. Is it necessary for us to cite to the trained legal mind authorities on the proposition, that plain and unambiguous language in a law must be given a meaning in accord with the well understood ordinary meaning of the words used? That where there is nothing to interpret, the court must follow the language of the law? We think not. But for the unschooled—not for the lawyer—we cite the following: Clark v. Railroad, 219 Mo. l. c. 534; State ex rel. v. Board of Curators, 188 S. W. l. c. 130 et seq.; Donaldson v. Donaldson, 249 Mo. l. c. 243; State ex rel. v. Wilder, 206 Mo. l. c. 549.

In the Clark case, LAMM, J., said: "Courts have no right, by construction, to substitute their ideas of legislative intent for that unmistakably held by the Legislature and unmistakably expressed in legislative words. *Expressum facit cesare tacitum.* We must not interpret where there is no need of it. [McCluskey v. Cromwell, 11 N. Y. l. c. 601-2.]"

In Donaldson's case it is tersely said: "Where the meaning of the lawmaker, as evidence by his words, is plain, there is no room for judicial construction."

So also in the Wilder case we said: "It is fundamental and one of the cardinal rules in the construction of statutes that the true intent and meaning of the lawmaking authority, as expressed in the language employed, should, if possible, be ascertained and declared. On the other hand, it is equally well settled that words and phrases shall be taken in their plain or ordinary and usual sense, and that it is incumbent upon the courts to construe a statute as written, without regard to the results of the construction, or the wisdom of the law as thus constructed."

The opinion quotes from 25 Ruling Case Law, page 978, paragraph 228, but omits vital language in that paragraph, as follows: *"But there is no room for an implication when the plain, mandatory provisions of the statute are to the contrary."*

The opinion does not (and could not well rule) that persons could be elected to an office in a district, or a county not yet in existence, but simply rules that by implication Section 7 can be construed to be in effect. The ruling is contrary to every ruling in this State dealing with plain and unambiguous language, and contrary to every text-writer upon the subject.

If it be conceded, which, for the purpose of this point only, we will concede, that a charter provision has the status of an act of the Legislature of the State, yet there are only fractions of the alleged new charter in effect, if any portion thereof can ever be effective. There is

584 SUPREME COURT, OF MISSOURI,

State ex rel. Attorney-General v. Kansas City.

no room for implications as to when a law or a statute becomes effective. To say the least it must become effective either per the force of some general provisions of law which puts all legislative acts into effect, or by some special provision of the act itself, which postpones the date at which it goes into effect. In the case before us, the instrument itself fixes the date when Section 7 and most of the other sections shall become effective; in other words, when they shall go into effect. It is not for a court to legislate, and by implication merely, re-write plainly written terms. We do not agree that any law can have a potential existence prior to the time fixed for it to become effective, as is written in the majority opinion. A law, which by its terms is to take effect in the future, only speaks of the date fixed for it to become effective, and not from a prior date. [State ex rel. Brunjes v. Boekelman, 240 S. W. l. c. 212.] There is nothing in either State ex rel. v. Dirckx, 211 Mo. 568, l. c. 578, and Poindexter v. Pettis County, 246 S. W. l. c. 40, which contravenes what is said in the Brunjes case, as to when the law goes into effect. Of course in a sense, it has a potential existence for some purposes, but not an effective existence, so far as the terms of the act are concerned. If the meaning of the act is to be determined, such law (one to become effective in the future, as fixed by its terms) might have a potential existence sufficient for a court to look at its terms for the purpose of giving a construction of it, with reference to some other act, or to determine when the act itself became effective, but this mere potential existence does not give vitality to the act prior to the date fixed for it to become effective. Such was the plain ruling of the Brunjes case, supra.

Another familiar rule of construction, is that the last legislative declaration takes precedence over previous declarations, even in the same act. To the legal mind need we cite cases upon this fundamental rule? In Section 486, which is the last expression as to when the several parts of the proposed instrument shall become effec-

Vol. 310]          APRIL TERM, 1925.                585

State ex rel. Attorney-General v. Kansas City.

tive, Section 7 is not made effective until April 10, 1926. The language of this Section 486 is plain and unequivocal, and there is no room for construction. It says that Section 7 with other sections shall go into effect on April 10, 1926. This court has not heretofore re-written a charter or a law, but has given to plain words their ordinary meaning. This Section 7 is the only one which creates and defines the districts. It cannot speak except at the date upon which it becomes effective. There are, therefore, no districts in existence from which to elect members of the council, either from the individual districts, or at large, for those to be elected at large cannot exceed one to a particular district. In other words one councilman-at-large must come from each of the four districts. There can be no districts until April 10, 1926, yet if the public press properly reports the facts, the city is now in the process of electing councilmen, to represent districts not now in existence.

There are other matters which to my mind are just as fatal to this charter, but if these suggestions are ineffective, it would be like casting seed upon stony ground to go further. Without more at this time (and I think that I have written sufficiently to justify my position) I again, under my own pen, most respectfully dissent. I did not feel that a mere silent dissent met my obligations to the office I hold, upon a case of this moment. *Walker* and *Woodson, JJ.,* concur in these views; *Walker, J.,* reserves the right to express additional views.

## ON MOTION FOR REHEARING.

ATWOOD, J.:—In support of relator's motion for rehearing it is urged that the new charter is invalid because reported by ten instead of all thirteen of the members of the charter commission, one member having died, one having resigned because of illness, and a third being absent from Kansas City at the time the charter was signed and reported, though he telegraphed his approval

of the work. This is relator's objection numbered 16, and he is entitled to a statement of our reasons for overruling same. It is claimed that the charter commission should not be governed by the same rules relating to a quorum which govern a legislative body or trustees of a public trust, though the implied distinction is not advanced on reason or authority. Whatever else it might have been, certainly the charter commission was a deliberative body. It was charged with the public duty of deliberating upon and reporting a form of new charter. The fundamental law authorizing the creation of such a body did not define a quorum or delegate the power to such body. We must look then to the common law as to what in such case would constitute a quorum, and the rule here clearly applicable is thus stated in 29 Cyc. 1688:

"Where a quorum is not fixed by the constitution or statute creating a deliberative body, consisting of a definite number, the general rule is that a quorum is a majority of all the members of the body."

The rule announced has been invoked in Seiler v. O'Maley, 227 S. W. (Ky.) 141, l. c. 142, and in Heiskell v. City of Baltimore, 4 Atl. (Md.) 116, l. c. 119. The principle is recognized as a part of the common law of England in Blacket v. Blizard, decided by Court of King's Bench in 1829, and reported in 9 Barnwell & Cresswell's Reports at page 851. The practical wisdom of such a rule is apparent particularly in a case like this where the Constitution makes no provision for the filling of vacancies. Neither in terms nor by intendment does the written law suggest that the labors of the charter commission should come to naught through the death of a single member before the completion of the work.

Relator also argues again his objection numbered 20, that the new districts have no legal existence and therefore, new charter Sections 417-425, both inclusive, providing for the election of councilmen on the first Tuesday in November, 1925, are void. We have previously dealt with this objection at length, but it may be here

suggested that relator, in the vigor of his attack upon our holding that charter Section 7 for the purposes of this election effectually fixes the district boundaries, either overlooks or ignores the express provision of charter Section 425 that: "The nomination and election of officers to serve for terms commencing April 10, 1926, shall be governed by the provisions of this charter."

This section must be construed with Section 488 upon which relator relies. The provisions of the charter appear in twenty related groups or articles and the mere fact that under this artificial arrangement Section 486 is later in numerical order than Section 425 is no reason why Section 486 should prevail over Section 425. On the contrary, Section 486 dealing generally with the subject of effective dates of charter sections, and Section 425 dealing specially with the nomination and election of officers, the latter or special section will be construed as an exception to the former or general section and will prevail over it. [36 Cyc. 1149.] Section 425 thus expressly calls into effect any and all provisions of the charter (not merely those made immediately effective by Section 486) which necessarily govern "the nomination and election of officers to serve for terms commencing April 10, 1926." If it speaks at all it speaks forth fully and freely its every necessary implication and intendment, unhampered and unimpaired by Section 486. *Blair, C. J.,* and *White* and *Ragland, JJ.,* concur; *Graves, Walker* and *Woodson, JJ.,* dissent.