THE STATE ex rel. HERMAN G. STOMP v. KANSAS
CITY; WILLIAM BUCHHOLZ et al., Members of
Board of Fire & Water Commissioners; ALEX. HEN-
DERSON, Chief of Fire Department; CLARENCE
I. SPELLMAN et al., Members of Board of Civil
Service; GEORGE E. KIMBALL, City Comptroller;
BEN JAUDON, City Treasurer; W. W. KNIGHT,
City Auditor, and ALBERT I. BEACH, Mayor.

In Banc, March 15, 1926.

1. **CIVIL SERVICE: Removal: Mandamus.** If an employee under the
civil service law of Kansas City was illegally removed on any
ground, he can by mandamus seek reinstatement and compel pay-
ment of the salary of which he has been thus deprived.

2. ———: ———: ———: **Jurisdiction.** The case having been argued
and submitted along with a companion case of which this court
had jurisdiction because of constitutional questions raised, and
by agreement and request of counsel all matters of attack upon
the new charter of Kansas City being admitted to apply to both
cases, this court will entertain relator's mandamus alleging that his
removal was violate of the civil service laws, notwithstanding it
has already been decided in said companion case that said new
charter is valid, and such constitutional questions have theretofore
been eliminated from the case.

3. ———: ———: **After Notice: Opportunity for Hearing.** The re-
moval, by the chief officer of the Fire Department, of a motor-driver,
employed in the classified civil service under the old charter, for
physical defects and overweight, by written notice wherein were
specified his physical defects and were recited the examination
and tests by which such defects were ascertained and wherein it
was further stated that it would be unsafe for him to climb ladders
on account of his weight, was legal, where after receiving said no-
tice of his discharge, to take effect in two weeks, he filed no demand,
in the office of the Board of Civil Service Commissioners, to be
heard on the reasons assigned in the notice for his removal, al-
though, in his mandamus suit to compel his reinstatement, he tes-
tifies that within two or three days after receiving the notice he
called at the office and was told that his discharge was final and the
board would not afford him a hearing, and further testifies that

State ex rel. Stomp v. Kansas City.

he was not incapacitated and for years had performed every duty required of motor-drivers, and he had been frequently promoted for efficient service rendered—there being positive and convincing testimony that he did not call at the office and made no request relating to a hearing.

*Held*, by GRAVES, J., dissenting, with whom WALKER, J., concurs, that relator was removed without a hearing, or any reasonable opportunity for a hearing, and under the old charter his discharge was therefore illegal.

4. **STARE DECISIS: Kansas City Charter.** The validity and constitutionality of the new charter of Kansas City having been determined in State ex rel. Attorney-General v. Kansas City, 310 Mo. 542, and public action having been taken in pursuance to that decision, all questions of its validity are now foreclosed, and cannot be opened in a different cause upon any ground which was or might have been decided in that case. [Per GRAVES, J., concurring.]

Courts, 15 C. J., Section 306, p. 919, n. 1. Mandamus, 38 C. J., Section 303, p. 713, n. 36; Section 311, p. 718, n. 7. Municipal Corporations, 28 Cyc., p. 446, n. 8, 12; p. 546, n. 20.

# Mandamus.

PEREMPTORY WRIT DENIED.

*John I. Williamson, Darius A. Brown, John G. Park, R. E. Ball* and *Milton Schwind* for relator.

(1)  Relator is entitled to a peremptory writ restoring him to the physical possession of his position and to the payment of the compensation thereof.  His discharge was illegal.  (a)  Relator received no written statement of reasons for removal until after his discharge had been decided upon and the order made.  Charter of 1908, art. 15, sec. 10; State ex rel. Hamilton v. Kansas City, 303 Mo. 50; State ex rel. Prior v. Kansas City, 261 S. W. 112; State ex rel. Langford v. Kansas City, 261 S. W. 115.  (b)  Relator was entitled to written specification of charges, notice of hearing, hearing and opportunity to controvert

313 Mo. Sup.—23.

charges.  Cases supra, and State ex rel. Reid v. Walbridge, 119 Mo. 383; Gracey v. St. Louis, 213 Mo. 395; State ex rel. Denison v. St. Louis, 90 Mo., 19. Such hearing must be conducted in conformity to the principles of the common law.  State ex rel. Reid v. Walbridge, 119 Mo. 383; 2 Dillon Mun. Corp. (5 Ed.) sec. 480; State ex rel. v. Milwaukee, 147 N. W. 50; Rutter v. Burke, 89 Vt. 14, 29; State v. Mayor, 43 La. Am. 92.  The testimony must be delivered under the sanction of an oath.  State ex rel. v. Walbridge, 119 Mo. 395; People ex rel. v. Pol. Commrs., 115 N. Y. 40; Rutter v. Burke, 89 Vt. 14.  The accused "must have notice, charges preferred against him; a full opportunity to examine and cross-examine witnesses and to be heard on the facts and on the law." State ex rel. v. Walbridge, 119 Mo. 396; Dullam v. Wilson, 53 Mich. 393.  It is for the courts to determine the sufficiency of the record and of the alleged causes for removal.  State ex rel. Reid v. Walbridge, 119 Mo. 394; State v. Lupton, 64 Mo. 415; State v. Walker, 68 Mo. App. 110; 28 Cyc. 440, 442, 443.  (c)  Mandamus is the proper remedy and relator is entitled to be thereby restored to his position and to recover the emoluments thereof.  State ex rel. Hamilton v. Kansas City, 303 Mo. 74; State ex rel. Chapman v. Walbridge, 153 Mo. 204.  (2)  The foregoing record of dismissal is insufficient because: (a)  It made the department physician and drillmaster triers of the facts; (b) there was never an accusation made, filed or served; (c) there was no hearing before the officer charged by the charter with the duty of acquitting or convicting; (d) there was never accorded to the accused an opportunity to meet an accusation, to summon witnesses, to have them testify nor to be heard upon the law or the facts; (e) the non-delegable power of acquittal and conviction was attempted to be delegated to subordinates; (f) no issue was framed upon which a final judgment of conviction or acquittal could rest.

*Solon T. Gilmore, F. W. McAllister, Cyrus Crane, J. S. Cannon* and *E. F. Halstead* for defendants.

(1) Relator was discharged in substantial compliance with the letter and the spirit of the Charter of 1908. Sec. 10, Art. 15, Sec. 16, Art. 11, Charter of 1908; Dalton v. Darlington, 123 App. Div. 855, 108 N. Y. Supp. 626; People ex rel. Donnelly v. Harvey, 127 App. Div. 211, 111 N. Y. Supp. 167; People ex rel. Scheel v. Guilfoyle, 65 App. Div. 498, 72 N. Y. Supp. 891; People ex rel. Kennedy v. Brady, 166 N. Y. 44; Dunphy v. Kingsbury, 159 N. Y. Supp. 389, 173 App. Div. 49. (a) Relator was given a fair hearing in accordance with the rules and customs of the fire department. (b) Relator, having been removed in compliance with the charter provisions, the only question for the court to decide is the good faith of the discharging officer or whether the removal was arbitrary. People ex rel. Kennedy v. Brady, 166 N. Y. 44; 2 McKinney's Consolidated Laws, New York, p. 97; People v. Palmer, 3 App. Div. 389, 38 N. Y. Supp. 651; People ex rel. Davis v. Sayer, 200 N. Y. Supp. 134, 205 App. Div. 562. (c) The writ should be denied for the reason that on account of the facts detailed, it would be the duty of the defendant fire chief to immediately remove relator were he reinstated. State ex rel. Stickle v. Martin, 195 Mo. App. 366; 23 Am. & Eng. Ency. Law (2 Ed.) p. 453; 2 Spelling on Injunctions and Other Extraordinary Remedies, sec. 1380; State ex rel. v. Temperance Assn., 42 Mo. App. 485; Rex v. Axbridge, 2 Cowp. 523; Boose v. Knights Security, 204 Mo. App. 18.

ATWOOD, J.—This is an original proceeding in mandamus to compel reinstatement of relator in the position of motor-driver in the Fire Department of the City of Kansas City, Missouri, from which position he was removed on or about December 5, 1924, by the Board of Fire and Water Commissioners and Chief of Fire Department of said city; and to compel payment to relator of the salary attached to said position since the date of relator's

removal.  In support of his petition relator suggests that the jurisdiction of this court is invoked because:

"(a)    Constitutional questions are involved;

"(b)    The validity of the 'New Charter' of Kansas City is in issue;

"(c)    Numerous lawsuits turning upon the same questions here raised are now pending; and

"(d)    The public welfare of Kansas City is vitally affected by these issues, and their speedy and authoritative decision will avoid intolerable confusion in the affairs of that city."

In his brief relator says that the principal questions involved are:

"(1)    Is the so-called 'New Charter' of Kansas City claimed to have been adopted February 22, 1925, a valid charter?

"(2)    Is a member of the competitive class of the city's civil service entitled to receive written detailed statement of charges and to notice and hearing before discharge?"

This case was argued and submitted along with the case of State ex rel. Attorney-General v. Kansas City et al., reported in 310 Mo. 542 (276 S. W. 389), and by agreement and request of counsel all matters of attack, upon the new charter of Kansas City in both cases, including constitutional questions therein raised, were considered and disposed of in this reported decision, and we there held this new charter valid.  However, if relator's removal was illegal on any ground he can in mandamus seek reinstatement and also payment of the salary of which he has been thus deprived.  [State ex rel. v. Walbridge, 153 Mo. 194, l. c. 204.]  Having heard this case on the above agreed submission we will entertain jurisdiction.

Relator was an employee of the Fire Department under the civil service law contained in Article XV of the Charter of Kansas City then in effect, and which became effective September 3, 1908.  The authority relied upon by defendants to remove relator is found in Section 10 of said Article XV, as follows:

"Such heads of departments shall respectively have power to remove or discharge any person holding any office, position, or employment in their respective departments whenever, in their opinion, the good of the public service requires the exercise of such power. It shall be the duty of a discharging officer, upon request of a discharged person, at any time after discharge, to give such person a correct statement in writing of the reasons for his discharge. No person in the city's service shall be removed, reduced in grade or salary, or transferred because of political or religious beliefs or opinions of such persons; nor shall any person in the competitive class of the city service be removed, reduced in grade or salary or transferred without first having received a written statement setting forth in detail the reasons therefor, and at the option of the person who shall have been removed, reduced, or transferred, a copy of such statement shall be filed in the office of the Civil Service Commissioners, together with reply, if any made thereto, by the person removed, and the whole shall be filed and preserved in the office of said commissioners and be open to public inspection."

The head of the Fire Department had the power to remove or discharge relator whenever in his opinion the good of the public service required the exercise of such power. [State ex rel. Hamilton v. Kansas City, 303 Mo. 50.] It is admitted that relator was not removed because of his political or religious beliefs or opinions. At the time of his removal relator was motor-driver in the Fire Department and in the competitive class of the city service. Consequently, the method of his removal must not contravene the last clause of Section 10 above quoted. [State ex rel. Hamilton v. Kansas City, supra.] Whether or not it does is the sole question left in the case. This inquiry should be met with a full understanding of the facts.

From the agreed facts upon which this case was submitted it appears that City Ordinance No. 38227, ap-

proved July 16, 1920, adopted the general schedule of all the agents and employees of the Fire Department fixed by the Board of Fire & Water Commissioners on July 12, 1920, and included one hundred motor-drivers, each at an annual salary of $1680, and 165 first grade firemen (all capacities) as required and when employed, each at an annual salary of $1560, the latter number being subsequently increased to 175 and salary raised to $1620 per annum. Section 3 of this ordinance also provided that all vacancies, except the position of substitute or second grade fireman, occurring in any position in the competitive class of classified service in the Fire Department, should be filled by promotion to be determined on recommendation of the Chief of Fire Department by the Board of Fire & Water Commissioners, approved by the Board of Civil Service.

Relator's civil service record shows that on October 7, 1912, he was appointed to the position of First Grade Fireman at an annual salary of $1020, which was raised by ordinance March 19, 1918, to $1200; again raised by ordinance May 5, 1919, to $1320; again raised by ordinance July 16, 1920, to $1620, and on December 24, 1920, he was promoted, under competitive promotional examination given October 20, 1920, by the Civil Service Board, to the position of motor-driver at an annual salary of $1680.

The following pertinent rules and regulations of the Kansas City Fire Department were in effect and operation at the time of relator's removal:

## "ARTICLE II.

## "Chief of Department.

"Sec. 1.   Chief shall have supreme command and management of the entire department and be designated and known as Chief of Fire Department.

"Sec. 2.   He shall be responsible for the discipline and proper conduct of the department as a whole, the enforcement of all laws, ordinances and regulations pertain-

ing thereto, and for the care and condition of the houses, hose carriages, engines, and all other property belonging to the department.

"Sec. 3.   He shall have power to assign all his subordinates and companies to fire duty, and may make transfers, assignments and details as in his judgment may be for the best interests of the service.

## "ARTICLE III.
### "Assistant Chief.

"Sec. 3.   He shall annually visit each Department house and cause a test to be made of each company, in the performance of their respective duties, viz., hitching, coupling, throwing water, raising and climbing ladders, etc., and enter a correct record of same in the journal at headquarters.

## "ARTICLE VIII.
### "Surgeon.

"Sec. 1.   The Surgeon shall be directly responsible to the Chief for the management of his office and shall keep an accurate record of all examinations and recommendations made by him; such record to be the property of the Department.

"Sec. 2.   He shall render to the Chief of Department a weekly statement of the condition of all men under his care.

## "ARTICLE IX.
### "Foreman.

"Sec. 17. · See that members are properly drilled in all that pertains to efficient fire duty and give special attention to the drill of substitutes and probationary members.

## "ARTICLE XVI.
### "General Rules.

"Sec. 4.   All members of the Fire Department shall perform such duties as may be required of them by the

Chief, his assistants or the foreman of their respective companies, and shall wear such uniforms, caps, badges and other insignia as the Chief and the Committee on Fire Department may direct.

### "ARTICLE XVIII.
#### "Drill Practice.

"Sec. 1. Company drills will be regulated from Department Headquarters and will be held at the School of Instruction located at Engine House No. 8."

On April 27, 1922, defendant Fire Chief issued the following general order:

"The commanding officer of day shift of each company, under the supervision of assistant and district chiefs, shall hold daily drills in quarters (excepting Sundays) in methods of fire practice, and the use and handling of ladders, tools and appliances, so that all members may become proficient and expert in all branches of the service."

Under date of September 4, 1924, said Fire Chief issued the following general order directed to assistant and district chiefs, captains and lieutenants:

"From this date forward Lieut. H. V. Ishum is assigned as Department Drillmaster, and he will have complete charge of training and drilling the members of the department at the drill towers at the various stations. Whenever he deems it necessary to order members to the drill tower, he will do so. I want every man to obey his orders, for his orders are mine."

On or about November 21, 1924, District Chief and Drillmaster H. V. Ishum received a written communication from said Fire Chief advising him that twenty-one employees, including relator, had been notified to present themselves at Fire Headquarters at two o'clock P. M., Monday, November 24, 1924, "for an efficiency examination as to their capability of actively performing the

duties of a member of the Fire Department," and he was requested to submit an individual report, in duplicate, upon each of these members.

On November 21, 1924, these employees, including relator, received written communication from the Fire Chief directing them to present themselves to Dr. C. E. Wilson, Department Physician, 924 Rialto Building, on Monday, November 24, 1924, at nine o'clock A. M., for medical examination with regard to their present physical condition, and further directing them to present themselves at two o'clock P. M. on the same day to District Chief and Drillmaster H. V. Ishum at Fire Headquarters, for an efficiency examination as to their capability of actively performing the duties of a member of the Fire Department. Pursuant to the instructions contained in this communication, relator and about eighteen other employees of the Fire Department presented themselves to Dr. C. E. Wilson, the Fire Department physician, surgeon and examiner, who examined relator along with the other employees and Dr. Wilson's report on relator communicated to the Fire Chief under date of November 24, 1924, was as follows:

"I hereby certify that I have today made a thorough medical examination of H. G. Stomp, motor-driver of Engine Co. No. 3, with regard to his present physical condition, and herewith submit a report of the same.

"Age 40 yrs. weight 260 lbs., height 6 ft.

"Aside from weight his general physical condition is good. Would be unsafe to put this man on ladders, on account of weight."

On the same day relator and twenty other Fire Department employees met Drillmaster Ishum pursuant to the aforesaid instructions, and were requested to perform certain reasonable drill tests in general use and practice in other cities and a part of the ordinary fire practice given the members of the Fire Department in Kansas City, Missouri. Pursuant to this test said District Chief and

Drillmaster made written report with regard to relator to said Fire Chief as follows:

"I hereby certify that I have today made a thorough examination and test of H. G. Stomp, motor-driver of Engine Co. No. 3, with regard to his efficiency and capability of actively performing the duties of a member of the Fire Department and herewith submit a report of the same. The above member unable to qualify under efficiency and capability test on account of being physically incapacitated."

On December 2, 1924, the following communication was addressed to relator by said Fire Chief:

"H. G. Stomp, Motor-Driver Engine Co. No. 3, Station No. 3, 215 West 19th St. City.

"Sir:

"You are hereby notified that pursuant to notice to you on November 21, 1924, to appear before the Department Physician for medical examination, and before the Department Drill Master for an efficiency examination, on November 24, 1924, that the reports of such examination were unfavorable.

"In accordance with the rules of the Department you are notified that you will be discharged on December 5, 1924, for the following reasons, to-wit:

" 'Physically incapacitated for the reason that it would be unsafe for you to climb ladders on account of your weight, as per report of Department physician, and further that you are unable to stand the efficiency test of the Department, as per report of Department Drill Master.'

"Respectfully,
" (Signed) Alex Henderson,
Chief Fire Department."

On or about December 5, 1924, relator received from defendant Fire Chief the following written communication:

"HEADQUARTERS FIRE DEPARTMENT.

"H. G. Stomp, Motor-Driver.

"Kansas City, Mo.   December 5, 1924.

"Engine Co. No. 3.

"Sir: You were this day discharged from the Kansas City Fire Department for causes as follows: 'Physically incapacitated for the reason that it would be unsafe for you to climb ladders on account of your weight, as per report of Department physician, and further that you are unable to stand the efficiency test of the Department, as per report of the Department Drill Master.'

"You will, therefore, deliver, to the secretary of the Department or the officer in command of the company to which you were attached, all Department property in your care and possession, including badge and identification card, and receive a receipt for the same.

"By order of Alex Henderson,

"Chief Fire Department."

Relator's name was not thereafter placed upon the pay roll of the Fire Department and he has received no salary from said Department since December 5, 1924. Prior to the filing of this suit relator caused to be served upon each of the defendants herein a written document as follows, omitting caption and signature:

"You and each of you are hereby notified that on and prior to December 5, 1924, I lawfully held the position of Motor-Driver, Fire Department, in the competitive class of the city service under Article 15 of the charter of Kansas City; that on said day, without there having been first delivered to me a written statement setting forth in detail the reasons therefor, and without being given any opportunity for a hearing, I was unlawfully and summarily ousted and removed from possession of said position and excluded from the rights, privileges and emoluments of the same.

"I hereby demand that you and each of you as officers of Kansas City in your respective official capacities, immediately take every step necessary under the law to restore me to all the rights, privileges and emoluments of said position and to pay me the salary from the date of said pretended discharge to the date of restoration."

It is admitted that in the opinion of the defendants Fire Chief and members of the Fire and Water Board, relator was at the time of his discharge and is now incapable of performing fire duty and the duties of a motor-driver or fireman; that relator has not made a request for a correct statement in writing of the reasons of his discharge; that he has not made a request or demand that a copy of the statement of discharge be filed in the office of the Civil Service Commissioners; that he has not made any reply to the written statement delivered to him under date of December 2, 1924, as hereinbefore set out, notifying him of the reasons of his discharge, except the above written notice and demand served upon defendants; that of the twenty-one Fire Department employees who underwent said inspection and test, all failed in the examination before the doctor or drillmaster, with one exception, and all who failed were discharged in the same manner and procedure used in discharging relator; that Motor-Driver W. S. Grooms received notice, appeared with relator and took and performed the tests given at the time and was not discharged, but is now drawing the salary and occupying the position of first-grade fireman, the steamer which Grooms was driving having been retired to the reserve; that the steamer which relator was driving prior to his removal was retired to the reserve and thereafter taken out of the service.

The stipulation as to agreed facts contained a brief statement of the testimony of each witness. Relator, Herman G. Stomp, testified that between January 1, 1921, and December 5, 1924, he was continuously and exclusively employed in the performance of the duties of motor-driver of the Fire Department and was never ordered or

requested to climb ladders or perform any other duties except those of a motor-driver. In this he is contradicted by defendant Fire Chief Alex Henderson, William Warner Dillon, a lieutenant in the Fire Department, and Fred Bomar. Relator also testified that two or three days after receiving notice from the Fire Chief of his removal, he called at the office of the Board of Civil Service in the Walsix Building in Kansas City, Missouri, exhibited said notice to the person in charge of the office of said board, asked said person what the board would do in a matter of that kind, and said person replied that relator was discharged and that that was all there was to it and the Board of Civil Service would not do anything. William E. Crampton, Vincent Brumwell and Ada Williams, secretary, assistant secretary and stenographer and clerk, respectively, of said board, testified that they were the only persons in the office or in the employ of said board, that relator never called at said office, that the conversation he testified to never occurred, and that it is a rule of said office, invariably complied with, that when a discharged employee makes a complaint there he is immediately informed of the date of the next meeting of said board and told to appear before the board at that time and that his matter would then be given attention by the board. Relator further testified that at the efficiency test held on November 24, 1924, he carried out and performed every order, command and test, except that of carrying the doughnut-roll hose, and desisted from the performance of this test only after he was twice ordered by Drillmaster Ishum and Superintendent of Repairs Morrisey to descend to the ground. In this he is flatly contradicted by the testimony of Ishum, Morrisey and Bomar, from which it appears that Drillmaster Ishum's report of relator's physical incapacity was fully warranted.

Fire Chief Henderson further testified that relator at the time of his removal was holding the position and drawing the pay of motor-driver and was a member of

the uniformed force of the Fire Department, and was required, as were and are all motor-drivers upon the Fire Department, to perform full fire duty and be capable of performing full fire duty at all times, including climbing and descending ladders, climbing and descending fire escapes, carrying hose and other activities listed in the fire drill practice; that a promotion from first-grade fireman to motor-driver does not relieve an employee from the requirements of the Department that he be capable and able to perform full fire duty and the evolutions in drill practice; that all members of the uniformed force of said department, which force included relator prior to his discharge, were required to perform full fire duty; that from his observation of relator and the reports made to him by the drillmaster and physician and surgeon, relator is inefficient, incompetent and incapable of performing fire duty, and his reinstatement on said department would be detrimental to the good of the service; that from January 1, 1920, to December 5, 1924, relator was repeatedly assigned to other duty than that of driving; that repeatedly during this period the steamer which relator was driving was taken out of service temporarily, and during this period relator, as is usual and customary, was assigned to other duties on the department; that the Board of Civil Service held an examination of motor-drivers on October 20, 1920, and issued their eligible list for same on December 10, 1920; that relator was certified from this eligible list on December 4, 1920; that previous to this certification as motor-driver, and since such certification, relator and all other drivers so certified performed the same identical duties—that of taking care of and driving the motor apparatus to which they were assigned, in addition to their regular duties as firemen in extinguishing fires when required; that a motor-driver in the Fire Department is simply a regular fireman who is paid five dollars a month extra salary for his extra care and responsibility in taking care of and driving the apparatus of the company to which he is assigned.

Relator's chief reliance is our decision in State ex rel. Hamilton v. Kansas City, 303 Mo. 50, 259 S. W. 1045, but we think the agreed facts clearly distinguish the two cases. In the Hamilton case the only notice given relator was the following written communication received by him from the Secretary of the Board of Public Works on June 1, 1918. "The Board of Public Works, at its regular meeting on, May 31, 1918, removed you from the position of Superintendent of Buildings, for cause and the good of the service, same to take effect June 1, 1918." We properly held that this written statement neither in time nor in substance complied with the charter provision that before his removal relator should have "received a written statement setting forth in detail the reasons therefor." But we are now confronted with a different state of facts. On December 2, 1924, relator Stomp received a written statement signed by the Chief of the Fire Department making appropriate reference to a physical examination and a drill test previously undergone by relator on November 21, 1924, advising him that the reports thereon were unfavorable, and further reading as follows: "In accordance with the rules of the Department you are notified that you will be discharged on December 5, 1924, for the following reasons, to-wit: 'Physically incapacitated for the reason that it would be unsafe for you to climb ladders on account of your weight, as per report of Department Physician, and further that you are unable to stand the efficiency test of the Department, as per report of Department Drill Master.' " Relator was not removed until December 5, 1924. We hold that the above written statement received by relator on December 2, 1924, complied both in time and in substance with the charter provision. A thorough examination of the agreed case fails to show anything short of a substantial compliance with the law which the people of Kansas City adopted governing the practice to be pursued in removing persons in the competitive class of the civil service of the city. There is not the slightest indication that in

relator's removal there was an abusive exercise of the power to remove, or any violation of the intent and spirit of the law. If relator believed otherwise or desired to be further heard on the reasons assigned for his removal his remedy was to exercise the option given him under the law to make reply and defend according to the practice and procedure of the civil service law.

Peremptory writ herein is denied and the proceeding dismissed. All concur, except *Otto, J.,* not sitting, and *Graves, J.,* who concurs in part and dissents in part, per separate opinion, and *Walker, J.,* who dissents and concurs in separate opinion of *Graves, J.*

GRAVES, J. (concurring in part and dissenting in part).—I agree that the case of State ex rel. Attorney-General v. Kansas City, 310 Mo. 542, 276 S. W. 389, settled the validity of the new charter of Kansas City. That ruling is *stare decisis* in this case, in so far as the ruling effects it. Action has been taken under that case, and the issues there raised should be finally closed, and this I say, without withdrawing a single sentence of my dissent in that case. There should be a time when questions of public interest and importance (as were the questions in the charter case) should be deemed settled, even though the settlement is by a mere majority of the court. By majority of this court the legality of the charter was declared, and public action has been taken under that ruling. This suffices for a concurrence in this portion of the present opinion. Rulings upon public questions of vital interest should not be reopened upon the mere insistance of a party to a different cause of action, nor (for that matter) upon any ground, which was, or might have been, in the original proceeding. The validity of a city charter, once decided and acted upon, should not thereafter be bandied around from post to pillar in future litigation.

But the rights of this defendant, if any, accrued before the new charter, or any part thereof became effective. To that portion of the opinion which holds that he was

legally discharged under the old charter, I do not agree, and to this portion of the opinion I dissent. I shall not undertake to elaborate upon them. Suffice it to say, that relator was removed without a hearing, or any reasonable opportunity for a hearing. *Walker, J.*, concurs in these views.