**STATE of Missouri, ex rel. Charles D. PAULI III, Relator-Respondent,**

**v.**

**Donald GEERS, Circuit Clerk, 21st Judicial Circuit, Defendant-Appellant.**

No. 33663.

St. Louis Court of Appeals, Missouri.

Nov. 24, 1970.

Rehearing Denied Dec. 30, 1970.

Joseph B. Moore, County Counselor, Thomas W. Wehrle, Deputy County Counselor, Mark M. Wenner, Asst. County Counselor, James H. White, Asst. County Counselor, Clayton, for defendant-appellant.

Shaw, Hanks & Bornschein, Clayton, for relator-respondent.

DOERNER, Commissioner.

Relator instituted this proceeding in mandamus in the Circuit Court of St. Louis County to compel defendant Donald Geers, Circuit Clerk of that County, to restore relator to the position of Deputy Circuit Clerk from which relator had been dismissed by defendant, and to obtain payment for relator's consequent loss of salary. The court granted relator the relief prayed, and defendant appealed.

The parties submitted the case to the court upon an agreed statement of facts, which reads:

## "STIPULATION OF FACTS

"It is hereby stipulated and agreed by and between the Plaintiff and the Defendant herein that the undisputed facts involved in this cause of action are as follows, to-wit:

"1. Plaintiff herein has been a Deputy Circuit Clerk for St. Louis County, Missouri, and has been acting as such since the month of March, 1959, until March 26, 1969.

"2. Defendant, Donald Geers, is the duly elected and qualified Circuit Clerk of St. Louis County, Missouri.

"3. St. Louis County, Missouri, is a body corporate and politic, a county of the first class of the State of Missouri, operating under a Home Rule Charter form of government, duly adopted on April 2, 1968, pursuant to the provisions of Article VI, Section 18(a); of the 1945 Constitution of the State of Missouri, V.A.M.S.; and having all the powers and duties prescribed by the Constitution, and the laws of the State of Missouri and the Charter and Ordinances of St. Louis County, Missouri.

"4. The St. Louis County Charter, adopted April 2, 1968, marked Exhibit 'A', and Chapter 202 SLCRO 1964, as amended, adopted pursuant to said Charter and pertaining to the merit system and Civil Service Commission, marked Exhibit 'B', are made a part of the record of this case as if offered and received in evidence.

"5. Plaintiff as an employee in the office of Circuit Clerk was subject to the provisions of the Charter and Ordinance of St. Louis County applicable to the merit system and the rules and regulations of the Civil Service Commission adopted pursuant to the Charter and said Ordinances.

"6. On the 26th day of March, 1969, Plaintiff was dismissed from his position as a Deputy Circuit Clerk for St. Louis County, Missouri, and Plaintiff's pay and benefits were suspended.

"7. Plaintiff pursuant to Section 7.-030(3) Article VII of the Charter ap-

pealed his dismissal to the St. Louis County Civil Service Commission.

"8. Hearings were held by the St. Louis County Civil Service Commission at which hearings Plaintiff was heard, the Defendant was heard, and other witnesses were heard. On May 26, 1969, the Civil Service Commission entered its findings and decision in which it recommended that Plaintiff be restored to his former position with full back pay and no record of interrupted service.

"9. Plaintiff has not been rehired by the Defendant. Defendant refuses to reinstate Plaintiff to Plaintiff's former position, and has refused to pay to Plaintiff the back pay all as recommended by the Civil Service Commission."

The pertinent provisions of the St. Louis County Charter and the ordinance referred to in the agreed statement of facts are these:

Article VI, Section 7.010 of the Charter, which provides in part:

" 'There is established a system of personnel administration for the appointment of all county employees and appointive county officers, except as otherwise provided in this charter, on the basis of merit ascertained as nearly as practicable by competitive examination and for the retention of said employees and officers on the basis of merit and ability * * *.' "

Article VI, Section 7.030, of the Charter, which states in part:

" 'The civil service commission shall from time to time recommend to the council and supervisor policies for the operation of the merit system and shall also:

" '(3) Hear appeals as provided by ordinance in case of disciplinary actions by appointing authorities, and from decisions of the personnel director in cases involving examinations and examination ratings;'

Section 202.180 of Ordinance 226, which reads in part:

" 'The director shall prepare and recommend to the commission a code of rules for the classified service which shall become effective upon approval by the commission after public notice and public hearing. * * * The rules shall provide:

" '(18) For the hearing by the Commission of any appeal from an employee who is dismissed or demoted after completing his probationary period of service, or who is suspended for more than thirty days in any one year. Both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard publicly. At such hearing technical rules of evidence shall not apply. If the Commission finds that the action appealed from was taken for any political, religious or racial reason, the employee shall be reinstated to his former position or a position of like status and pay, and shall be reimbursed for any loss of pay resulting from the action appealed from. In all other cases the Commission shall submit findings and recommendations to the appointing authority, who shall make appropriate disposition of the case.' "

It will be noted that no mention is made in the agreed statement of facts of the reason advanced by defendant for his dismissal of the relator. However, we believe that we may safely assume that the ground advanced was not for any political, religious or racial reason. For had such a reason been alleged by the defendant, and found by the Civil Service Commission not to have been substantiated, the Commission undoubtedly would have expressly ordered and directed the reinstatement of relator, as specifically authorized by the foregoing ordinance.

The issue which divides the parties is the construction to be placed upon the last sentence of the quoted portion of the ordinance: " * * * In all other cases the

Commission shall submit findings and recommendations to the appointing authority, who shall make appropriate disposition of the case." Does that language mean, as relator contends, that it is mandatory upon the appointing authority to dispose of the case in accordance with the findings and recommendations of the Commission? Or does it mean, as defendant asserts, that it is discretionary with the appointing authority as to whether, in disposing of the case, he will abide by such findings and recommendations. We hold the former.

■ The key words in the sentence under consideration are "recommendation" and "appropriate disposition." Defendant stresses that in ordinary usage the word "recommendation" connotes merely advice and counsel on the part of the giver, which the recipient is under no obligation to accept or follow. Black's Law Dictionary, p. 1436; Webster's Third New International Dictionary, p. 1897. But it is a familiar rule that in the construction of legislative enactments the reason of the law should prevail over the letter of the law, City of Joplin v. Joplin Water Works Co., Mo., 386 S.W.2d 369; that consideration may be given to the purpose and object sought to be accomplished, Stewart v. Johnson, Mo., 398 S.W.2d 850; and our Supreme Court has said that while plain language may not be capriciously ignored, " * * * in determining what the language really means we may consider the entire purpose and policy of the statute and 'the language in the totality of the enactment' and construe it in the light of 'what is below the surface of the words and yet fairly a part of them.' * * * " State ex inf. Kamp, etc. v. Pretended Consolidated School Dist. No. 1 of Montgomery County, 359 Mo. 639, 223 S.W.2d 484, 488; State ex rel. Henderson v. Proctor, Mo., En Banc, 361 S.W.2d 802, 805.

The purpose and intent of civil service ordinances have been judicially stated in Gracey v. City of St. Louis, 213 Mo. 384, 111 S.W. 1159, 1162, as follows:

"Justly interpreted, the foregoing municipal laws tell a story that even one who runs may read. It is obvious, first, that they were directed to tempering a little the pressure and hunger for the spoils of office—a hunger which, unregulated, tends to impair the public service of a great city. These laws hold out modest inducements of some degree of stability in public employment. They tend to the betterment of the civil service in quality of men and work. They respond to the idea of a reasonable regulation of tenure of office—an idea so well hammered out on the anvil of public discussion that it has come to stay so long as calm and wise judgment holds sway, and which is not beyond the pale of judicial aid. * * * "

And to the same effect see State ex rel. Eckels v. Kansas City, Mo.App., 257 S.W. 197, and State ex rel. Rundberg v. Kansas City, 206 Mo.App. 17, 226 S.W. 986.

In Kirby v. Nolte, 351 Mo. 525, 173 S.W.2d 391, the meaning of the word "recommendation" as used in the civil service amendment of the charter of the City of St. Louis was held to be mandatory. There the amendment under consideration created a civil service commission and provided for a director of personnel. One of the director's duties, which he performed, was the preparation of a plan for the classification of various positions and the compensation for each classification. The plan was approved and adopted by the Civil Service Commission, and in the form of an ordinance was then submitted and officially recommended to the Mayor and Board of Aldermen for adoption. The Board amended the compensation plan by reducing the salaries provided for some of the positions, as so amended passed the ordinance, and the Mayor approved it. Thereafter the Commission instituted an action against the Board and the Mayor for a declaratory judgment that the Board could not pass, and the Mayor could not approve, any classification or compensation plan unless

the same was recommended by the Commission. The charter amendment in question read that the Mayor and the Board:

"* * * shall provide, by ordinance:

"'(a) for adoption of a comprehensive compensation plan for the fixing of rates of pay of all employees in the classified service, and amendments thereto, on recommendation of the Civil Service Commission, and for its application and interpretation.'"

The issue before the Court, and its decision, was stated as follows (173 S.W.2d 392):

"The meaning and effect of the words 'on recommendation of the Civil Service Commission' is the controverted issue. Are they words of suggestion or are they mandatory? We hold the latter. * *"

And the court concluded its opinion with the statement (173 S.W.2d 392):

"* * * Accordingly, the board may not fix salaries without the recommendation of the commission."

As is true of many words in our language, the word "appropriate" has a variety of meanings depending upon the relationship in which it is used. Webster's Third New International Dictionary, p. 106. In the field of eminent domain, to appropriate means to devote, set apart, or assign land or an interest therein to a particular purpose. Kansas City Power & Light Co. v. Kansas City, Mo., 448 S.W.2d 612. In connection with fiscal matters a similiar meaning is conveyed as to money. Jennings v. Kinsey, 308 Mo. 265, 271 S.W. 786. Employed in a criminal statute, it implies the exercise of dominion over funds in a manner inconsistent with the owner's Title thereto. Trice v. Lancaster, Mo. App., 270 S.W.2d 519. And see 6 C.J.S. Appropriate p. 121.

In the foregoing examples "appropriate," preceded by "to" or "for" Kansas City Power & Light Co. v. Kansas City, Mo., supra, is a verb. But the word is also an adjective, and as such it is said to be synonymous with "suitable," "proper," "consistent or in accordance with," "fitting," and "necessary." Webster, supra; C.J.S., p. 123, supra. For example, in both the Fourteenth and Fifteenth Amendments to the Constitution of the United States it was provided that "Congress shall have power to enforce this article by appropriate legislation"; and the Eighteenth Amendment, since repealed, declared that "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation." In determining whether or not a particular statute was "appropriate legislation," the courts have defined it as meaning legislation designed to carry out the objectives of the pertinent amendment, Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; to make the amendment fully effective, Ex parte Gilmore, 88 Tex.Cr.R. 529, 228 S.W. 199; to enforce the amendment by suitable means, National Prohibition Cases, 253 U.S. 350, 40 S.Ct. 486, 64 L.Ed. 946; and as consistent with and tending to make effective the purposes of the amendment, State v. Gauthier, 121 Me. 522, 118 A. 380; Burrows v. Moran, 81 Fla. 662, 89 So. 111.

■ In the light of the foregoing decisions defining the word "appropriate" we are of the opinion that the phrase "appropriate disposition" as used in the sentence under consideration means a decision consistent with, and which will make effective, the findings and recommendations of the Civil Service Commission. To hold to the contrary would for all practical purposes make the appeal and review procedure provided for before the Civil Service Commission a useless and ineffective proceeding, for human nature being what it is it would be rare indeed for an appointing authority to agree that he had erred in the disciplinary action taken by him. Furthermore, and of greater importance, such a contrary holding would be inconsistent with the concept of a civil service system, the purpose and objective

of which is not alone to temper a little "* * * the pressure and hunger for the spoils of office" but to foster "* * * the betterment of the civil service in quality of men and work" and to assure "* * * tenure of office" and "* * * some degree of stability in public employment." Gracey v. City of St. Louis, 213 Mo. 384, 111 S.W. 1159, 1162.

Since the Civil Service Commission found that the relator should be reinstated to his former position, and it was mandatory upon the defendant to do so, it follows that mandamus was the proper remedy upon the defendant's refusal to reinstate relator. State ex rel. Rundberg v. Kansas City, 206 Mo.App. 17, 226 S.W. 986; State ex rel. Eckels v. Kansas City, Mo.App., 257 S.W. 197.

Defendant's final point, as stated in his brief, is that "* * * Assuming *arguendo* that the trial court was correct in its judgment, order and decree that Relator must be reinstated to his former position, the trial court erred in its judgment, order and decree that Relator be reinstated with full back pay and not subject to be reduced by the amount of his actual or potential earnings from other employment during the term of his absence." In support of that argument defendant cites Tate v. School District No. 11 of Gentry County, 324 Mo. 477, 23 S.W.2d 1013 and Hoover v. Citizens Home Bank, Mo.App., 245 S.W.2d 154, both of which involved suits for breaches of contracts of employment. The present action was one in mandamus, and we have some doubt whether the rules as to mitigation of damages in a breach of an employment contract are applicable in an action of that nature. Assuming, however, without deciding that they are, there is nothing in the stipulation of facts which indicates that relator actually earned, or could have earned, anything during the term of his absence. And as held in Tate, one of the cases cited by defendant, even in a case for breach of a contract of employment the burden is on the defendant to show that the plaintiff could have mitigated his damages, a burden which this defendant failed to carry. Streett v. Laclede-Christy Company, Mo., 409 S.W.2d 691.

For the reasons stated the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.