Johnny Ray CHADD, Appellant,

v.

CITY OF LAKE OZARK, Respondent.

No. WD 72098.

Missouri Court of Appeals, Western District.

Oct. 12, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2010.

Anthony L. Gosserand, for Appellant.

Paul D. Link, for Respondent.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

Johnny Ray Chadd appeals the summary judgment entered in favor of the City of Lake Ozark (City) on his petition for damages for wrongful termination (lost wages) and prima facie tort. Mr. Chadd claims that the trial court erred in finding that the doctrine of res judicata barred his claim for lost wages and that the doctrines of employment-at-will and sovereign immunity barred his prima facie tort claim. The judgment is affirmed.

The City hired Mr. Chadd as the city administrator in the fall of 2004. On August 9, 2005, at a meeting of the board of alderman, Mr. Chadd was discharged from the position after a split vote of the board of alderman and a tie-breaking vote by the mayor.

Thereafter, on October 10, 2005, Mr. Chadd filed a petition for peremptory writ of mandamus in the Miller County Circuit Court alleging that he had been terminated illegally and seeking an order requiring the City to reinstate him. He did not seek any other relief in that action. The circuit court entered its judgment and order denying Mr. Chadd's petition.

Mr. Chadd appealed the circuit court's judgment, and this court issued a mandate to the circuit court directing it to enter an order requiring the City to reinstate Mr. Chadd as the city administrator. It found that statute and city ordinance required a vote of the mayor and a majority of the board of alderman to remove city officers.

*Chad v. City of Lake Ozark,* 223 S.W.3d 208, 214 (Mo.App. W.D.2007).

On August 16, 2007, the circuit court entered its judgment ordering the City to reinstate Mr. Chadd as the city administrator. On August 20, 20007, the City reinstated Mr. Chadd to the position of city administrator. It then immediately removed Mr. Chadd from the position by a unanimous vote of the board of alderman.

Thereafter, Mr. Chadd filed his petition for damages seeking damages for wrongful termination, specifically lost wages for the period between the first termination and the reinstatement, and for prima facie tort in connection with his second termination. The City filed a motion for summary judgment. The trial court granted the City's motion for summary judgment finding that Mr. Chadd's claim for lost wages was barred by the doctrine of res judicata and the prima facie tort claim was barred by both the employment-at-will and sovereign immunity doctrines. This appeal by Mr. Chadd followed.

Appellate review of the grant of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

### Res Judicata

In his first point on appeal, Mr. Chadd claims that the trial court erred in entering summary judgment in favor of the City on the first count of his petition for wrongful termination (lost wages) based on the doctrine of res judicata. He argues that the identities of cause of action and thing sued for were lacking.

■ The Latin phrase *"res judicata"* means "a thing adjudicated" and prohibits a party from bringing a previously litigated claim. *Kesterson v. State Farm Fire & Cas. Co.,* 242 S.W.3d 712, 715 (Mo. banc 2008); *Chesterfield Vill., Inc. v. City of Chesterfield,* 64 S.W.3d 315, 318 (Mo. banc 2002)(quoting BLACK'S LAW DICTIONARY 1312 (7th ed.1999)). Now commonly referred to as claim preclusion, res judicata also precludes a litigant from bringing, in a subsequent lawsuit, claims that, with the exer-

cise of reasonable diligence, could have been brought in the first suit. *Kesterson,* 242 S.W.3d at 715.

> For res judicata to adhere, "four identities" must occur: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made.

*King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1991). "To determine whether a claim is barred by a former judgment, the question is whether the claim arises out of the same 'act, contract or transaction.'" *Chesterfield Vill.,* 64 S.W.3d at 318–19.

> What factual grouping constitutes a "transaction"... are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Kesterson,* 242 S.W.3d at 715 n. 4 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (2007)). The factual bases for the claims rather than the legal theories are considered for purposes of applying the res judicata doctrine. *Chesterfield Vill.,* 64 S.W.3d at 318–19. "Separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *King Gen. Contractors,* 821 S.W.2d at 501 (internal quotation marks and citation omitted). Whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions should also be considered. *Kesterson,* 242 S.W.3d at 716.

The doctrine applies not only to those points and issues on which the court in the former case was required to form an opinion and pronounce judgment, "but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contractors,* 821 S.W.2d at 501. "Claims that could have been raised by a prevailing party in the first action are merged into, and are thus barred by, the first judgment." *Chesterfield Vill.,* 64 S.W.3d at 318. "'The claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part or the transaction.'" *Kesterson,* 242 S.W.3d at 715 n. 4 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (2007)).

Mr. Chadd's claim for lost wages arose out of the same act as his previous claim for reinstatement and, thus, should have been brought in the first suit. His discharge on August 9, 2005, without the support of a majority of the board of alderman as required by the City's ordinances formed the bases of the previous lawsuit and the current one. The same operative facts gave rise to his suit for reinstatement and his suit for lost wages. Only the requested remedies differed.

The facts in this case are substantially similar to those in *Chesterfield Village, Inc. v. City of Chesterfield,* 64 S.W.3d 315 (Mo. banc 2002). Chesterfield Village filed an action for declaratory and injunctive relief regarding the city's refusal to rezone a tract of land. *Id.* at 317. It obtained a judgment declaring the city's zoning of the tract illegal and ordering the city to place a reasonable zoning classification n the tract. *Id.* at 316–17. Thereafter, the city adopted an ordinance that rezoned the

tract. *Id.* at 317. Three years later, Chesterfield Village filed its second action seeking damages against the city for significantly impairing the value of the tract between the time it initially petitioned the city to rezone and when the city rezoned the property following the judgment in the first action. *Id.* The trial court dismissed the second suit for failure to state a claim upon which relief could be granted based on the doctrine of res judicata. *Id.* at 317–18.

The Missouri Supreme Court affirmed finding that any claim for damages that Chesterfield Village attempted to assert in the second action was part of the claim in the first action against the city. *Id.* at 321. It explained that the operative facts upon which both cases were based were the actions of the city in denying rezoning and that a claim for damages could well have been included in the first action. *Id.* at 320. Thus, Chesterfield Village's claim for damages merged into the first judgment and was precluded. *Id.* at 321.

■ Mr. Chadd contends that because the purpose of mandamus is to execute not adjudicate, he did not have the ability to seek damages in the first action. A writ of mandamus will lie not only to compel public officials to do that which they are obligated by law to do but to undo that which they were prohibited by law from doing. *State ex rel. Thomas v. Neeley,* 128 S.W.3d 920, 924 (Mo.App. S.D. 2004). Mandamus is the proper remedy to compel reinstatement of a public officer or employee illegally removed or discharged. *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35, 43 (Mo.1969); *State ex rel. Ciaramitaro v. City of Charlack,* 679 S.W.2d 405, 406 (Mo.App. E.D.1984); *State ex rel. Pauli v. Geers,* 462 S.W.2d 166, 171 (Mo.App.1970). "Consistent with this rule, if the removal of a public employee is illegal on any ground, he is entitled to

reinstatement and restoration of lost earnings." *Missey,* 441 S.W.2d at 43–44. *See also State ex rel. Stomp v. Kansas City,* 313 Mo. 352, 281 S.W. 426 (1926)(if fireman's removal was illegal on any ground, he can in mandamus seek reinstatement and also payment of the salary of which he has been thus deprived). Mr. Chadd's claim for lost wages could well have been included in the first action for writ of mandamus. *See Missey,* 441 S.W.2d at 43–44; *Stomp,* 281 S.W. at 426; and *Pauli,* 462 S.W.2d at 171 (mandamus proceedings were proper forms of action for discharged and demoted city employees seeking reinstatement to their jobs and restoration of lost earnings).

■ Mr. Chadd also contends that his cause of action for lost wages was not capable of ascertainment at the time he sought reinstatement. "An improperly dismissed public employee is entitled upon reinstatement to recover his lost back pay from the date of termination to the date of his reinstatement" minus any deductions for income received during that time from employment or unemployment benefits. *Morgan v. City of St. Louis,* 154 S.W.3d 6, 12 (Mo.App. E.D.2004). In his first action, Mr. Chadd alleged that he had been terminated illegally and sought reinstatement. In making such allegation, Mr. Chadd knew that he may have a claim for lost wages. The fact that he did not know at that point precisely the total amount of damages is inconsequential. "An injured party, whether injured in body or property rights, can assert a claim for damages even though the party may not know precisely the nature and extent of the injury." *Chesterfield Vill.,* 64 S.W.3d at 320. Mr. Chadd's claim for lost wages did not arise from new facts occurring after judgment in the first action but was based on the same operative facts as his claim for reinstatement. His claim for lost wages was, there-

fore, precluded. The trial court properly entered summary judgment for the City on count I of Mr. Chadd's petition. The point is denied.

### Employment–At–Will Doctrine

In his second point on appeal, Mr. Chadd contends that the trial court erred in entering summary judgment in favor of the City on the second count of his petition for prima facie tort based on the doctrines of employment-at-will and sovereign immunity. Because the employment-at-will issue is dispositive, sovereign immunity need not be addressed.

 Absent an employment contract with a statement of duration, an employment at will is created. *Luethans v. Washington Univ.*, 894 S.W.2d 169, 172 (Mo. banc 1995). Generally, an employer can discharge an at-will employee for any reason without liability for wrongful discharge as long as the employee is not otherwise protected by a contrary statutory provision. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010); *Drury v. Mo. Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 565–66 (Mo.App. E.D.2008). The employment-at-will doctrine is also limited in other respects. An employer cannot terminate an at-will employee based on the employee's " 'race, color, religion, national origin, sex, ancestry, age or disability.' " *Keveney*, 304 S.W.3d at 101 (quoting § 213.055, RSMo Cum.Supp. 2009). Additionally, Missouri recognizes the public policy exception to the doctrine, which provides a cause of action for wrongful discharge to an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy. *Id.*

 Count II of the petition alleged that Mr. Chadd's second termination constituted an intentional lawful act, occurred because the City was displeased with the result of Mr. Chadd's petition for writ of mandamus and did not wish to replace the interim city manager, was intended to cause injury, was without justification, and was willful, malicious, and done in reckless disregard of Mr. Chadd's rights. The petition did not allege an employment contract and a discharge in violation of such contract terms nor did it allege protection under a contrary statutory provision. The petition also did not allege that Mr. Chadd was discharged based on his race, color, religion, national origin, sex, ancestry, age or disability or in violation of a clear mandate of public policy. The undisputed facts showed that Mr. Chadd was an employee-at-will. He may not, therefore, bring an action for wrongful discharge under the guise of prima facie tort. *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985); *Sager v. Reynolds*, 750 S.W.2d 616, 617 (Mo.App. W.D.1988). The trial court properly entered summary judgment for the City on count II of Mr. Chadd's petition. The point is denied.

The judgment of the trial court is affirmed.

All concur.